Michael J. Dontzin, J.
These cases are considered and disposed of by this decision since they involve identical legal and factual issues. Defendants by their attorneys move to dismiss their indictments pursuant to CPL 210.20 (subd 1, par [h]).
The grounds for the relief sought are that certain actions of law enforcement officials of the New York State Drug Enforcement Task Force (hereafter referred to as Task Force)* have violated defendant’s rights under the equal protection and due process clauses of the Constitutions of both the United States and the State of New York.
The defendants were arrested as a result of investigations *245 conducted by the New York Drug Enforcement Task Force. The actual arrest was made by Federal Drug Enforcement Administration (D.E.A.) special agents. The "drugs” involved in all of the alleged transactions were analyzed by the D.E.A. laboratory.
It is alleged that after being arrested, each defendant was taken to a Task Force or D.E.A. office and were told by the Task Force or D.E.A. agent that he should co-operate (turn informer); that if he co-operated he would be prosecuted Federally and treated "leniently”; that if he failed to co-aperate he would be prosecuted in the New York State courts, with the consequent harsher penalties (mandatory mínimums, lifetime maximum sentence and lifetime parole upon conviction).
In all instances, the defendants refused to "co-operate” and were indicted in the New York State courts for varying degrees of class A felonies. All the witnesses who testified before the Grand Juries which indicted the defendants were special agents of the D.E.A.
In support of their position, counsel for the defendants submitted an affidavit made by a Ms. Katherine Hudson (a law student), based upon her conversations with officials of the D.E.A. and the Task Force. According to her affidavit, the following criteria are followed by the Task Force in channeling cases from the Task Force to the State or Federal courts for prosecution: available sentencing structure (harsher sentence under State law); amount of narcotics involved (lesser cases to State courts); need for search warrants (easier to obtain in State courts); extent of conspiracy (easier to prove in Federal jurisdiction); requirements of corroboration (easier rules in Federal jurisdiction); opportunity for trial as opposed to plea bargaining (greater percentage of trials in Federal jurisdiction).
Aside from the question of constitutional validity, one cannot seriously quarrel with these criteria as being factually either arbitrary or unreasonable.
This court is hard pressed to find any basis for the defendant’s assertion that the Task Force agents are the "decision makers” regarding the forum of prosecution, and that this is an unconstitutional assumption of power. At best the procedures for implementation of the criteria outlined in the Hudson affidavit are recommendations that are acted upon by the *246 Federal and State prosecutors — who control the prosecution in all respects.
The defendant’s contention that the criteria and procedures as outlined, in and of themselves result in constitutionally impermissable selective or discriminatory prosecutions, cannot be sustained as a matter of law.
It is well settled that where a single act violates more than one statute an offender may be prosecuted under either (United States v Gilliland, 312 US 86). A defendant does not have a constitutional right to be prosecuted under a Federal rather than a State law, where his acts violate both (Hutcherson v United States, 345 F2d 964, cert den 382 US 894). This is so, even where he is prosecuted under that statute which imposes the higher penalty (United States v Eisenman, 396 F2d 565, 568; Black v United States, 405 F2d 187; Hutcherson v United States, supra).
It is permissible to prosecute a defendant in two jurisdictions where the laws of the both have been violated (Abbate v United States, 359 US 187; Bartukus v Illinois, 359 US 121), provided that there is no violation of the proscription against double jeopardy (Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County, 37 NY2d 560).
It is quite clear that the ultimate discretionary power, absent abuse and unlawful discrimination, to determine the course, extent and forum of prosecution is with the prosecutor (People v Eboli, 34 NY2d 281). "Moreover, the conscious exercise of some selectively in enforcement is not in and of itself a federal or state constitutional violation”. (Oyler v Boles, 368 US 448, 456.)
However, a serious constitutional issue is raised where, as it is claimed here, the defendant’s were singled out for prosecution under a specific statute in a specific jurisdiction, in order to expose them to harsher or higher penalties upon conviction, solely because they refused to co-operate and turn informers.
The court, based on its own extensive experience in cases such as these, recognizes and takes judicial notice that in order to "co-operate” the defendants would be compelled to give a full statement as to their own activities and participation in the drug transactions for which they were indicted, as well as, implicate all others who may have been involved. Moreover, the defendants would have to become confidential informers for the Task Force and help them "make” other drug *247 cases (bring about the arrest and prosecution of drug law offenders).
The fundamental constitutional issues here are the same as those in similar cases where the courts found unconstitutionally selective or discriminatory prosecution.
United States v Falk (479 F2d 616) involved a conviction for failure to possess a draft registration card and for refusal to submit to induction in the armed forces. Falk claimed he was singled out for discriminatory prosecution because he was an active member of an organization that counseled draft resisters. His conviction was reversed and the case remanded for a hearing on the issue of whether there was a discriminatory prosecution purpose in seeking his indictment.
Similar results were reached in United States v Steele (461 F2d 1148) which involved a conviction for refusing to answer questions in a census report in violation of Federal law. The defendant there argued that he had been deliberately selected for prosecution because of his known activities in a census resistence movement.
Convictions were also reversed in United States v Crowthers (456 F2d 1074). There the courts found unlawful selective prosecutions of the defendants who were convicted of violating disorderly conduct regulations of a Federal agency which prohibited loud and unusual noises, obstruction of passageways and distribution of handbills at the Pentagon. There the defendants contended that they were selected for prosecution solely because they held a "Mass for Peace” in opposition to the Viet Nam War; whereas, many other activities involving as much noise, obstruction, etc., took place at the Pentagon without any governmental reaction.
United States v Berrios (501 F2d 1207) dealt with an indictment and prosecution of the defendant on the grounds that he was serving as an officer of a labor union, within five years of his conviction of a felony, in violation of Federal law. Berrios claimed that he was selected for prosecution because he supported Senator McGovern as against Richard Nixon in the 1972 presidential elections and for the further reason that he was attempting to unionize a hotel chain that enjoyed close ties with President Nixon and his family.
While the case turned on a procedural point, the court went to great lengths to discuss the principles of law laid down in the Falk, Crowthers and Steele cases (supra), and to condemn as unconstitutional prosecutions based on impermissible con *248 siderations as race, religion or the desire to prevent (the defendant’s) exercise of constitutional rights (supra, p 1211).
Similarly in Dixon v District of Columbia (394 F2d 966) the court struck down a prosecution as being a violation of due process where the motivation for the prosecution was retaliating against the defendants, who after agreeing not to do so, filed misconduct complaints against certain police officers. The court found these prosecutions to be an infringement on the rights of citizens to protest against official misconduct.
The Supreme Court in Blackledge v Perry (417 US 21), went further than the courts did in Falk, Crowthers, Steele and Berrios by holding that due process of law is violated where there is a prosecutorial opportunity for vindictiveness — even when there is no evidence that the prosecutor acted in bad faith or maliciously (pp 27-28).
Perry, an inmate in a North Carolina prison, was found guilty of a misdemeanor assault as a result of an altercation with another inmate. Under North Carolina law (which has a two-tiered court system), a defendant had an absolute right to a trial de nova when appealing his lower court decision. After filing his appeal, but prior to the trial de nova, the prosecutor obtained a felony indictment against Perry based on the same conduct for which he was convicted of a misdemeanor. The court set aside the subsequent felony conviction on the ground that it was "not constitutionally permissible for the State to respond to Perry’s invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de nova” (pp 28-29).
The court in Perry decided the case by drawing an analogy to its earlier decision in North Carolina v Pearce (395 US 711), which dealt with a situation where defendants after successfully overturning a prior conviction were retried, convicted and sentenced to a more severe sentence the second time around. The court’s rationale in both Perry and Pearce was that due process requires a defendant be freed of apprehension of retaliation by a prosecutor or a sentencing Judge for exercising a basic right, i.e., to appeal.
The circumstances in all of the cases discussed above are different than those here only in that they dealt with the selection of specific individuals for prosecution, out of a whole class or group who may have been similarly situated but not proceeded against, in derogation of the prosecuted individuals’ First Amendment rights, or against individuals for invoking *249 certain statutory rights. However, the alleged prosecutorial practices which place these defendants in the serious situation they find themselves here, if true, are no less invidious or in bad faith. For surely, there is no constitutional difference between selective prosecution as a weapon against political foes, the dissident, or those who seek to exercise certain statutory rights — and that whose inevitable effect is to discourage the assertion of Fifth Amendment rights against self-incrimination or which violate Fourteenth Amendment rights of equal protection.
Whatever appropriate or commendable purposes the prosecutors may have had in setting up a system to determine which alleged offenders are prosecuted in what jurisdiction, they cannot pursue their objective by any means that needlessly chill the exercise of basic constitutional rights. (Cf. United States v Jackson, 390 US 570, 582.)
Almost 100 years ago the Supreme Court expressed a basic principle of equal protection, which has been followed to this day, when it observed that the administration of laws “with an evil eye and unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances * * * is within the prohibition of Constitution” (Yick Wo v Hopkins, 118 US 356, 373-374).
Although Yick Wo dealt with an abuse of discretion in the administration of a public ordinance by a city licensing board, “the underlying principle has nevertheless been properly held to apply to actions of police officials and prosecutors [citations omitted]” (United States v Falk, 479 F2d 616, 618, supra).
“Nothing can corrode respect for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations such as race, religion, or control over the defendant’s exercise of his constitutional right, as the basis for determining its applicability [citations omitted]” (United States v Berrios, 501 F2d 1207, 1209, supra). This was similarly expressed by our own State courts in People v Utica Daw’s Drug Co. (16 AD2d 12, 16): "If the court finds that there was an intentional and purposeful discrimination, the court should quash the prosecution, not because the defendant is not guilty of the crime charged, but because the court, as an agency of government, should not lend itself to a prosecution * * * which would violate constitutional rights of defendant’s.”
Defendants’ motion to dismiss the indictments are granted *250 to the extent that a hearing is ordered to determine the validity of their claims of selective or discriminatory prosecution (People v Goodman, 31 NY2d 262, 268-269; People v Utica Daw’s Drug Co., supra, p 17).
Generally, defendants in matters as these are required to establish selective or discriminatory prosecution by a clear preponderence of the proof (People v Utica Daw’s Drug Co., supra, p 18). However, under the circumstances here, the better and fairer view on the issue of proof is that the presumption that prosecution is in good faith and nondiscriminatory is overcome when the defendant presents sufficient facts to raise a reasonable doubt about the prosecution’s purpose. The prosecution would then be required to go forward to justify on some rational basis their actions in selecting these defendants for prosecution in the New York State courts. (United States v Falk, 479 F2d 616, 620, supra.)

 The Task Force is a tripartite organization consisting of Federal, State, and local law enforcement representation. It is funded by this Federal Drug Enforcement Administration (hereafter referred to as D.E.A.) with some moneys provided by the Law Enforcement Assistance Administration.