OPINION OF THE COURT
David O. Boehm, J.
Defendant was arrested on May 22, 1985 after the filing of a criminal complaint accusing him of the unlawful distribution of a controlled substance, in violation of 21 USC § 841 (a) (1). He was arraigned on the same day before a United States Magistrate. The arrest apparently followed an investigation conducted by the New York Drug Enforcement Task Force.*
A preliminary hearing was held on June 5, 1985 before the United States Magistrate, who bound the matter over for the Federal Grand Jury. Upon the initiation of Melchor Castro, an Assistant United States Attorney assigned to the Task Force and cross-designated as an Assistant District Attorney for Monroe and Wayne Counties, the criminal complaint was dismissed on July 15, 1985, before it reached the Federal *352 Grand Jury. The matter was then presented by Castro to the Monroe County Grand Jury which, by indictment No. 583, filed August 15, 1985, charged the defendant with the criminal sale of a controlled substance, second degree, in violation of Penal Law § 220.41 (1).
Defendant moved to dismiss the indictment on the ground that bringing the prosecution in State court was vindictive and selective, and therefore violated his rights under the equal protection and due process clauses of the US and NY Constitutions. Since defendant’s motion papers contained adequate factual allegations, his application for a hearing was granted, and one has been held.
The proof submitted, outside of agreed stipulations of fact, consisted solely of the testimony of Frank Maggio, one of the defendant’s attorneys, and of Castro. The facts are essentially undisputed. Although the court is sympathetic with the plight the defendant finds himself in because of his unwillingness to cooperate with the Task Force agents, the proof fails to meet his burden of proving that the prosecution was selective or discriminatory (see, People v Goodman, 31 NY2d 262; People v Utica Daw’s Drug Co., 16 AD2d 12, 18). Nor does it meet the lesser standard, suggested in People v Marcus (90 Misc 2d 243, 245), of overcoming the presumption that the prosecution was in good faith and nondiscriminatory.
There is nothing constitutionally impermissible in prosecuting a defendant in two jurisdictions where the laws of both have been violated (Abbate v United States, 359 US 187; Bartkus v Illinois, 359 US 121). If a defendant violates more than one penal code, he may be prosecuted under either (United States v Gilliland, 312 US 86). Nor is there a constitutional right to be prosecuted under the law which imposes the lower penalty (Hutcherson v United States, 345 F2d 964, cert denied 382 US 894). Even the deliberate exercise of some selectivity in enforcement does not, of itself, become a constitutional violation (Oyler v Boles, 368 US 448, 456).
Constitutional rights are offended when the enforcement of a law is clearly retaliatory in nature or serves some other illegitimate purpose (People v Hill, 67 AD2d 427; People v Utica Daw’s Drug Co., 16 AD2d 12, supra; People v Marcus, 90 Misc 2d 243, supra), such as to punish the protected conduct of a defendant (United States v Berrios, 501 F2d 1207 [2d Cir 1974]; United States v Crowthers, 456 F2d 1074 [4th Cir 1972]). The factors required for a showing of selective enforcement *353 were set forth by the Second Circuit in Berrios, as follows: "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government’s discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.’ * * * Mere 'conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation’.” (501 F2d, at p 1211.)
Defendant has made no showing that he alone, from among others in similar situations, has been singled out for prosecution in the State court, nor that the prosecution against him was made invidiously or in bad faith. His claim is that the prosecution was transferred to the jurisdiction of the State, thereby subjecting him to harsher penalties, solely because of his choice to exercise his constitutional right not to incriminate himself or to act as a police informer.
But the proof does not bear this out. What was shown at the hearing is that the defendant’s attorneys approached Castro on the morning of the preliminary hearing about the possibility of keeping the prosecution in Federal court, after they were advised that the case was to be referred for State prosecution. Castro told them what would be required of the defendant; that he would have to consent to be debriefed by a Task Force representative, to act as a confidential informer, and to be involved in at least three transactions. If the defendant were willing to enter into such an agreement the case would remain in Federal court, otherwise it would be referred to the Monroe County Grand Jury. However, Castro advised defendant’s attorneys that even if the case were prosecuted in State court there would still be the possibility of recognizing the defendant’s cooperation if defendant had not "come around” before the case was transferred.
Defendant’s attorneys told Castro they would let him know but, after a meeting with defendant and his wife, they did not further discuss defendant’s possible cooperation with Castro, probably because of defendant’s unwillingness to participate. Although it was agreed at their meeting of June 5, 1985 that *354 defendant’s attorneys would notify Castro, defendant’s refusal to cooperate was never conveyed to Castro. Finally, on July 2, 1985, Castro prepared the order dismissing the Federal criminal complaint and it was signed by the United States Magistrate on July 15, 1985. On July 2, 1985 Castro also sent out notices that the case would be presented to the Monroe County Grand Jury on July 29, 1985.
Castro testified at the hearing that the defendant’s act involved a street sale and, therefore, under the Federal court guidelines, was the kind of case which the Task Force would ordinarily prosecute in State court. Apparently only large scale drug conspiracies are retained in Federal court. To a State court, this clearly smacks of invidious discrimination, but one which affects only a State court’s self-esteem, not the defendant’s rights. When asked why, then, he had bothered to commence prosecution in Federal court, Castro replied, not too convincingly, that, because there were Federal warrants against this and other defendants, it was easier to go to one Judge.
Upon being pressed, Castro finally conceded that also under consideration was the possibility of obtaining the defendant’s cooperation. It was not the "prime motivation,” Castro explained, but it was in the back of their minds. The court makes the finding that this motivation was not quite so far in back as claimed. This appears to be nothing more than a manipulation of the Federal and State judicial systems as a prosecutorial tool. Even though not of constitutional dimensions, not yet at any rate, it clearly verges on being an abuse of due process, and should be discouraged.
Although the ultimate discretionary power to decide the forum and extent of prosecution is with the prosecutor (People v Eboli, 34 NY2d 281), this power is not unfettered and due process prohibits abuse of this discretion (North Carolina v Pearce, 395 US 711; see also, Blackledge v Perry, 417 US 21). On the other hand, there is no violation of due process where a prosecutor carries out a threat, made during plea negotiations, to reindict the defendant on more serious charges if he does not plead to the charged offense (Bordenkircher v Hayes, 434 US 357; see also, United States v Goodwin, 457 US 368).
The last cited cases involve the balance which exists between a defendant and the prosecutor during plea negotiations, i.e., the right of the defendant to plead or not to plead to the lesser charges offered and the right of the prosecutor to *355 abandon, reduce or increase the charges accordingly. This is not, however, the situation which exists here. The choice given to the defendant was not whether to plead, but whether to put his and his family’s safety in jeopardy by acting as an informer. This he had a clear right to refuse to do. Nevertheless, the defendant may not, as here, impose a potential due process violation upon the prosecutor merely by asking what would be required of him to keep the prosecution in Federal court. The prosecutor, by responding, does not thereby violate the defendant’s constitutional rights, particularly where, as here, the discussion is not pursued by the prosecutor and he does nothing further which could be construed, even arguably, as applying pressure on the defendant to come around (see, Donaldson v Dalsheim, 508 F Supp 294, affd 672 F2d 899, cert denied 455 US 951).
For the foregoing reasons, the motion of the defendant to dismiss the indictment is denied.

 The court takes judicial notice that the Task Force consists of Federal, State and local law enforcement representatives.