In the Matter of DORA P., a Person Alleged to be a Juvenile Delinquent, Respondent.

First Department, June 28, 1979

722

---

**APPEARANCES OF COUNSEL**

*Stephen J. McGrath* of counsel *(L. Kevin Sheridan* and *Francis F. Caputo* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellant.

*Beryl Kuder* of counsel *(George D. Zuckerman* with her on the briefs; *Robert Abrams, Attorney-General),* for intervenor-appellant.

*Janet R. Fink* for respondent.

**OPINION OF THE COURT**

BLOOM, J.

On March 6, 1977, respondent, then 14 years of age, was arrested and charged with robbery in the second degree, assault in the second degree and prostitution. Initially, she gave her age as 16. Accordingly, she was arraigned in the Criminal Court. At that time it was ascertained that she was only 14. She was, therefore, paroled and directed to appear in the Family Court on March 8, 1977. On that day a petition was filed charging her with juvenile delinquency in that, acting in concert with four others one of whom had been apprehended, she "did forcibly steal property, to wit: $30 in U.S. currency from the Complainant, and with intent to cause physical injury did cause physical injury to the Complainant by beating the Complainant about the head and body with her fists. Hospital treatment was necessary. Respondent did offer to perform a deviate sexual act for U.S. currency". The petition further alleged that such acts, if committed by an adult, would constitute robbery in the second degree, assault in the second degree and prostitution.

Respondent was paroled in the custody of her mother and the matter was adjourned to April 27, 1977 for hearing. On April 5, 1977, respondent filed her answer and demand for a

bill of particulars. Pursuant to the demand, petitioner served his bill on April 22, 1977. The averments of paragraph 10 thereof set forth that: "On March 6, 1977, at about 8:30 p.m. Respondent accosted complaining witness on the street and offered to engage in sexual acts with him for a fee of $10; he agreed and Respondent took him to the Evans Hotel, 273 W. 38 Street, New York City. Complaining witness paid $4 for the use of a room, and went there with Respondent. Two other females and two males were in the room. All five forcibly stole $40 from complaining witness and beat him".

On April 27, 1977. respondent's Law Guardian moved orally to dismiss the charge of prostitution on two grounds: (1) inasmuch as respondent was under the age of 17 years she was deemed incapable of consenting to a sexual act (Penal Law, § 130.05, subd 3, par [a]), and (2) the statute proscribing prostitution (Penal Law, § 230.00) is unconstitutional. Seemingly, the defense that respondent was incapable of consent because of her age was abandoned in Family Court. It is not here urged. Accordingly, we do not treat with it.

After filing of affidavits and the exchange and submission of legal memoranda, the motion to dismiss was finally submitted in August, 1977. Prior thereto, in June, 1977, the court, pursuant to CPLR 1012 (subd [b]), caused notice to be served upon the Attorney-General informing him that the proceeding was pending, and that it involved the constitutionality of section 230.00 of the Penal Law. He was invited to intervene. A similar notice was sent on September 8, 1977, this time directed to subdivision 2 of section 130.00 and section 130.38 of the Penal Law. On both occasions, the Attorney-General declined the invitation.

On December 5, 1977, the court rendered this decision (Matter of P., 92 Misc 2d 62) holding that subdivision 2 of section 130.00 and section 230.00 of the Penal Law are unconstitutional. She dismissed all charges of "sexual misconduct" and adjourned the hearing on the robbery and assault charges to January 13, 1978. On the adjourned date, the court in the absence of respondent, dismissed the two remaining charges, sua sponte, asserting that respondent had been denied a speedy trial.

I

At the outset, we are urged to dismiss this appeal upon the ground that the passage of more than two years since

respondent's arrest has made the case academic. However, the exclusive original jurisdiction conferred upon the Family Court over persons alleged to be juvenile delinquents (Family Ct Act, § 713) is controlled by "the age of the respondent at the time the delinquent act allegedly was done" (Family Ct Act, § 714, subd [a]), and not by the age of respondent at the time of hearing. Moreover, the case raises matters of constitutional dimension and grave public interest. They are important in the context of juvenile justice; indeed they bear upon the operation of the criminal justice system. They are apt to recur, albeit in fact patterns which may vary in degree from that here posed.

■ Accordingly, we decline the invitation to dismiss the appeal as moot. Instead, we have determined to resolve the merits (Arnold v District Council No. 9, Int. Brotherhood of Painters and Allied Trades, AFL-CIO, 46 NY2d 999; see, also, People v Parker, 41 NY2d 21, 25; Matter of Amato v Ward, 41 NY2d 469, 471; Matter of Beattie v New York State Bd. of Parole, 39 NY2d 445, 446-447; Iafrate v Suffolk County Bd. of Elections, 42 NY2d 991, 992; Matter of Rosenthal v Harwood, 35 NY2d 469, 472; People ex rel. Donohoe v Montanye, 35 NY2d 221, 224; Le Drugstore Etats Unis v New York State Bd. of Pharmacy, 33 NY2d 298, 301; People ex rel. Guggenheim v Mucci, 32 NY2d 307, 310). Additional support for this conclusion is to be found in rulings of the United States Supreme Court (Roe v Wade, 410 US 113, 124, 125, reh den 410 US 959; Doe v Bolton, 410 US 179, 187-188, reh den 410 US 959).

II

We treat next with the dismissal of the proceeding by the court, sua sponte, on January 13, 1978 on the ground that respondent has been deprived of a speedy trial. Concededly, at that time, the proceeding had been pending for more than 10 months. It must also be noted that, at the time of the institution of the Family Court proceeding, there was stamped on the orders and adjournment sheet, the notation "STANDARDS & GOALS DEADLINE FOR FACT FINDING FOR THIS CASE IS JUNE 24, 1977".

Against this must be counterbalanced the fact that on April 27, 1977, respondent moved to dismiss the prostitution charge against her and, as late as July 29, 1977, more than a month after the deadline date for the fact-finding hearing, was still

submitting affidavits in support of that motion. It is undisputed that final submission of the motion to dismiss did not take place until August, 1977.

To this must be added the following: On the argument, we were told that in the period intervening between the institution of this proceeding and its disposition by the order of dismissal, respondent, in a totally unrelated proceeding, was found to be a person in need of supervision and was placed, pursuant to subdivision (c) of section 754 of the Family Court Act. She thereafter absconded and a warrant for her apprehension was issued and outstanding at the time of the dismissal of this proceeding. Indeed, she was not present in court on the day of the dismissal.

Respondent, also on argument, conceded the truth of these assertions. Her reply thereto was that whenever her presence had been required in this proceeding, she attended. The significance of this statement escapes us. Although there were numerous intermediate adjournments, her presence was not *required* at any of them. No hearings took place and no testimony was taken. The one time her presence was *required* was the time when the fact-finding hearing was scheduled to be held, January 13, 1978. Concededly, she was not present at that time. In the absence of a showing that she was present in court on specific occasions, and no such showing has been made, there is no basis for charging petitioner with the delay in proceeding to a fact-finding hearing.

■ The right to a speedy and public trial is guaranteed by the Sixth and Fourteenth Amendments to the Federal Constitution *(Klopfer v North Carolina,* 386 US 213; *Smith v Hooey,* 393 US 374; *Dickey v Florida,* 398 US 30), and by State statute (Civil Rights Law, § 12; CPL 30.20). Indeed, so important does this State consider the right, that it has encompassed it within a specific time frame (CPL 30.30). While the right, as defined by the Federal Constitution and State statute, speaks only of criminal proceedings, "[i]t would take a distorted view to believe that adult felony criminal proceedings were designed to be more tender of the rights of detained adults than the Family Court proceedings are of juveniles" *(People ex rel. Guggenheim v Mucci,* 32 NY2d 307, 313, *supra;* see, also, *People ex rel. Kaufmann v Davis,* 57 AD2d 597).

Mere passage of time is not, in and of itself, sufficient to trigger the constitutional right to dismissal upon the ground that a speedy trial has been denied *(Barker v Wingo,* 407 US

514). In determining whether the constitutional right has been infringed, there must be a balancing of factors including "(1) the extent of delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay." *(People v Taranovich,* 37 NY2d 442, 445.)

The Legislature has sought to simplify the issue by narrowing the temporal duration after which a person charged becomes entitled to a dismissal for failure to accord her a speedy trial (CPL 30.30). However, respondent does not, as indeed she cannot bring herself within the ambit of the statute. Under CPL 30.30 (subd 4, par [a]), there is to be excluded "a reasonable period of delay resulting from other proceedings concerning the defendant, including but not limited to * * * pretrial motions * * * and the period during which such matters are under consideration by the court". If the period commencing April 27, 1977, when the motion made by respondent's Law Guardian to dismiss the charge of prostitution was first made, through August, 1977, when it was finally submitted, to December 5, 1977, when the motion was decided, is excluded, as excluded it must be under CPL 30.30 (subd 4, par [a]), it becomes obvious that there has been no unnecessary period of delay.

Thus, whether considered under Federal constitutional standards or under State statutory standards, there has been no infringement of respondent's right. In the absence of a hearing demonstrating consideration and balancing of the factors enumerated in *Taranovich (supra),* there is no basis for a holding that her *constitutional* right to a speedy trial has been infringed. In light of the periods required to be excluded under CPL 30.30 (subd 4, par [a]), it is plain that there has been no infringement of her *statutory* right.

Respondent's reliance on *People v Coleman* (47 AD2d 578) is clearly misplaced. That case involved a time frame governed by the Code of Criminal Procedure. Section 669-a of the Code of Criminal Procedure authorized a defendant incarcerated in a State penal institution to require that he be brought to trial on an untried indictment within 180 days after a proper demand.

In *Coleman (supra),* defendant moved to dismiss on the ground that he had been deprived of a speedy trial. The court

did not determine the motion until some eight and one-half months after it was made. The Appellate Division, treating the motion to dismiss as a demand for a trial under section 669-a noted that by holding the motion for a period longer than the period specified in the statute, the court had lost jurisdiction over defendant. Accordingly, it dismissed the indictment. Hence, this case furnishes no authority for the action of the Family Court in dismissing the petition in this case.

In the circumstances here indicated, dismissal of this proceeding was improper.

### III

Before we proceed to consideration of the constitutional issues raised, there is a preliminary point which must be disposed of. Initially, the Corporation Counsel filed timely notices of appeal from both the order of December 5, 1977, dismissing the sex charge and the order of January 13, 1978, dismissing the proceeding. After further consideration, he concluded that the December 5, 1977 order was not appealable as of right. Accordingly, he moved to dismiss that appeal. That motion was granted. He now seeks to review the order of December 5, 1977 on this appeal from the order of January 13, 1978.

Section 1112 of the Family Court Act provides that appeal may be taken as of right in juvenile delinquency proceedings only from an order of disposition (*Matter of Lance S.*, 51 AD2d 1057). From any other order in such proceedings, appeal will lie "in the discretion of the appropriate appellate division" (Family Ct Act, § 1112). Section 1118 makes the provisions of the CPLR, where appropriate, applicable to appeals from the Family Court. Under CPLR 5501 (subd [a], par 1), an appeal from a final judgment brings up for review, any nonfinal order which necessarily effects the final judgment, provided that such nonfinal order has not previously been reviewed by the court to which the appeal is taken.

■ Here, the order dismissing the charge of "sexual misconduct" was not a final order of disposition. It could not be the subject of an appeal as of right. Nonetheless, it is here reviewable as an intermediate order.

### A

We deal first with the holding that "sections * * * 130.38

and 130.00 (subd 2) of the Penal Law are unconstitutional under the New York State Constitution[1] in that these statutes constitute a denial of equal protection and invade respondent's constitutionally protected right of privacy" *(Matter of Dora P., 92 Misc 2d 62, 67, supra).*

Section 130.00 of the Penal Law defines the terms used in the article dealing with sex offenses. Under subdivision 2 thereof, deviate sexual intercourse is "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva". Section 130.38 defines consensual sodomy as "deviate sexual intercourse with another person" and denominates it a class B misdemeanor.

Nowhere in the petition charging respondent with acts which, if committed by an adult, would constitute a crime, is there any reference to either subdivision 2 of section 130.00 or section 130.38. The acts complained of are robbery in the second degree (Penal Law, § 160.10); assault in the second degree (Penal Law, § 120.05) and prostitution (Penal Law, § 230.00). Although it is alleged that respondent offered "to perform a deviate sexual act for U.S. currency" that allegation merely particularizes the sexual conduct in which respondent offered to engage so as to bring the charge within the ambit of the definition of prostitution.

It is a cardinal tenet of our law that constitutional questions should not be reached unless there is need for their determination to resolve the issue at hand and the question is squarely presented *(Comiskey v Arlen, 43 NY2d 696; Matter of Peters v New York City Housing Auth., 307 NY 519; Anti-Fascist Committee v McGrath, 341 US 123).*

No such need here exists; nor, indeed, is the issue presented. Were respondent to be found guilty of the sexual misconduct with which she is charged, the finding could only be that she had performed acts which, if committed by an adult, would constitute prostitution. That is the only sexual misconduct

---

1. Apparently, the court below based her opinion on State constitutional grounds, for in *Doe v Commonwealth's Attorney for City of Richmond* (425 US 901, reh den 425 US 985), the U. S. Supreme Court affirmed, without opinion, a determination of a three-Judge court for the Eastern District of Virginia (403 F Supp 1199) holding the Virginia sodomy statute constitutional even though the sexual conduct involved was practiced privately and consensually (see, also, *Rose v Locke,* 423 US 48). Seemingly, the hope was that this State would give broader scope to its Constitution than the Supreme Court has given to the Federal Constitution.

with which she is charged, and, hence, is the only conduct of which she could be found guilty. In reaching out to come to grips with a problem which was not before it, the Family Court erred.

B

The prostitution statute (Penal Law, § 230.00) was invalidated on the ground that it constituted an invasion of constitutionally protected privacy[2] and denial of equal protection.

1. The current recognition of the right of privacy[3] as a constitutionally protected right finds its origin in *Griswold v Connecticut* (381 US 479). In the cases which followed *(Stanley v Georgia,* 394 US 557; *Eisenstadt v Baird,* 405 US 438; *Roe v Wade,* 410 US 113, *supra),* the right was firmly embedded in the law and expanded. Thus, the limitation of the right to inform, instruct and give medical advice to married persons regarding drugs and instruments, the purpose of which is to avoid conception *(Griswold v Connecticut, supra);* to possess obscene films in the home without indication of any intent to sell or circulate them *(Stanley v Georgia, supra);* to administer, prescribe, or dispense drugs or articles designed to prevent conception to other than married persons *(Eisenstadt v Baird, supra);* and the imposition of criminal sanctions for abortion *(Roe v Wade, supra)* were all held to intrude upon areas of personal privacy in which the State had no legitimate governmental interest.

However, *Paris Adult Theatre I v Slaton* (413 US 49) is clearly indicative of the limitations on the right of privacy and of the power of the State to act when important State interests are at stake. There at issue was the right to enjoin the public showing of obscene films exhibited to consenting adults only. The court held that the right of privacy "encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation and child rearing"

---

2. Whatever may be the rule in other jurisdictions, in this State, there is no legally recognized right of privacy save as it may be conferred by statute (Civil Rights Law, §§ 50, 51; *Wojtowicz v Delacorte Press,* 43 NY2d 858, affg 58 AD2d 45; *Flores v Mosler Safe Co.,* 7 NY2d 276; *Kiss v County of Putnam,* 59 AD2d 773).

In criminal matters, however, when the Federal Constitution affords an accused a greater measure of protection than does the State Constitution, we are held to Federal standards (cf. *People v Rice,* 41 NY2d 1018).

3. As here used, the term "right of privacy" is separate and apart from those rights specifically protected by the Fourth and Fifth Amendments to the Federal Constitution.

*(Paris Adult Theatre I v Slaton, supra,* p 65). Thus, it limited the constitutionally protected right of privacy to those acts deemed "fundamental" or implicit in the concept of "ordered liberty" and did not exempt from State regulation those matters in which government has a legitimate interest *(Paris Adult Theatre I v Slaton, supra,* pp 65, 66).

Clearly, the right here claimed, i.e., to use the public streets to solicit, agree or offer "to engage in sexual conduct with another person for a fee", is hardly one to be deemed "fundamental" or implicit in the concept of "ordered liberty". The important State interest in proscribing the conduct here involved is emphasized when the offeror is a 14-year-old child. Here there is no familial or quasi-familial interest to be protected. The act is, therefore, well within the reach of the police power of the State. Moreover, public solicitation of a sex act for a fee is hardly to be equated with and accorded the same privacy as an act committed under the domestic blanket, whether marital, nonmarital or extramarital.

█ Upon the facts here presented, we hold that the statute criminalizing prostitution is not an invasion of any constitutionally protected rights of privacy.

2. We reach, finally, the fundamental issue, that of equal protection of the law. More than 90 years ago, we were taught that constitutional infirmity was established when ordinances, fair on their face, were administered "so exclusively against a particular class of persons as to warrant and require the conclusion, that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth Amendment to the Constitution of the United States. Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." *(Yick Wo v Hopkins,* 118 US 356, 373-374; see, also, *People v Acme Markets,* 37 NY2d 326; *Matter of 303 West 42nd St. Corp. v Klein,* 46 NY2d 686.)

"To invoke the right successfully, however, both the 'unequal hand' and the 'evil eye' requirements must be proven—to wit, there must be not only a showing that the law was not applied to others similarly situated but also that the selective application of the law was deliberately based upon an impermissible standard such as race, religion or some other arbitrary classification" *(Matter of 303 West 42nd St. Corp. v Klein, supra,* p 693). Here, the contention is that the selective application is bottomed upon sex, a category clearly suspect under the equal protection clause *(Orr v Orr,* 440 US 268; *Matter of Sontag v Bronstein,* 33 NY2d 197; *New York State Div. of Human Rights v New York-Pennsylvania Professional Baseball League,* 36 AD2d 364).

From this as a base, respondent argues that the "unequal hand" and the "evil eye" are demonstrated by the discrepancy, as shown by statistics, between the number of females and males prosecuted. The short answer to this claim is that respondent lumps together two separate crimes in order to obtain a favorable statistical base. That prostitution and patronizing a prostitute are discrete crimes is apparent when consideration is given to the separate acts necessary to effect their commission. Indeed, so different are the crimes considered that the Legislature by a statute which became effective September 1, 1978 (L 1978, ch 627), divided the crime of patronizing a prostitute into four separate degrees with penalties ranging from a fixed maximum term of three months to a maximum indeterminate sentence of seven years. Thus, to compare the number of prosecutions for prostitution with the number of prosecutions for patronizing a prostitute is to have recourse to the "unequal hand" forbidden by *Yick Wo (supra)* and of which respondent so bitterly complains.

█ Equally important is the procedural infirmity from which this proceeding suffers. "In particular, in our State, the claim of unequal protection is treated not as an affirmative defense to criminal prosecution or the imposition of a regulatory sanction, but rather as a motion to dismiss or quash the official action" *(Matter of 303 West 42nd St. Corp. v Kelin, supra,* p 693; see, also, *People v Goodman,* 31 NY2d 262, 268-269; *People v Utica Daw's Drug Co.,* 16 AD2d 12, 15-18). Thus, an evidentiary hearing is required so that the court may determine the constitutional issue. At such a hearing, a mere showing that some fish have been caught while others have slipped through the net will not suffice. "The conscious exer-

cise of some selectivity in enforcement of the law is not in itself a constitutional violation" *(People v Goodman, supra,* p 268; see, also, *Oyler v Boles,* 368 US 448; *Matter of Di Maggio v Brown,* 19 NY2d 283). What is required is a showing that the law is enforced consciously and deliberately against some and that, with knowledge that the crime has been committed by others, there is an intentional and premeditated abstention from enforcing it against others.

▇ Not only was that not shown here, but the preliminary step necessary to the establishment of the fact—the evidentiary hearing—was not conducted. Under the circumstances, the holding that section 230.00 of the Penal Law was discriminatorily enforced was without warrant in law.

Accordingly, the order of the Family Court, New York County (TAYLOR, J.), rendered December 5, 1977, dismissing the charge of prostitution and the order of the Family Court, New York County (DEMBITZ, J.), rendered January 13, 1978, dismissing the proceeding, are reversed, on the law, and the case is remanded for further proceedings not inconsistent herewith, without costs.

BIRNS, J. P., FEIN, LANE and MARKEWICH, JJ., concur.

Order, Family Court, New York County, entered on or about December 5, 1977, and order of said court, entered on January 13, 1978, reversed, on the law, and the case remanded for further proceedings not inconsistent with the opinion of this court filed herein, without costs and without disbursements.