OPINION OF THE COURT
Mathilde C. Bersani, J.
Defendants in these two cases are charged with the same offense, are represented by the same counsel, have made the same motions, and have argued the motions together; therefore, the court will deal with both cases together.
Defendants have made an omnibus motion, most of which has already been decided. The court reserved decision on motions for the following relief: (1) an order dismissing the accusatory instruments charging defendants with prostitution, on the ground that the defendants’ right to equal protection under the Fourteenth Amendment to the United States Constitution and under section 11 of article I of the New York Constitution has been violated by the Syracuse police and Onondaga County District Attorney’s discriminatory enforce *849 ment of article 230 of the Penal Law; (2) as an alternative to dismissal of the accusatory instrument, an order granting defendants an evidentiary hearing to determine whether or not they have been victims of unconstitutional selective enforcement of article 230 of the Penal Law; and (3) an order granting defendants discovery and inspection of statistical data relating to the arrest and prosecution of persons charged with violating sections 230.00 and 230.03 of the Penal Law (prostitution and patronizing a prostitute in the fourth degree, respectively) since September 1, 1978.
These motions arise from the following alleged facts. On November 15, 1979, defendant Sherry Nelson was arrested in the City of Syracuse for prostitution in that she allegedly offered to have sexual intercourse with a male for a fee. Defendant and the male drove off in his car, were shortly afterward stopped by the police who asked the male what he was doing with the girl. The male told them that defendant had offered him sex for a fee. The police then arrested the defendant for prostitution and asked her male "victim” (the term used in the police report) if he was willing to make a statement; he agreed. The male victim was not arrested or charged with patronising a prostitute.
On December 10, 1979, defendant Helen Prince was arrested for prostitution in that she allegedly approached a male sitting in his parked car outside a downtown bar and offered him sex for a fee. They then drove off to a house on the west side. By the time they arrived, the male had changed his mind and decided simply to drop the defendant off. As he drove away, he was stopped by the police, who had been following in a car, and was asked what he had been doing with the girl. The male "victim” (so described in the police report) told the police that he had been offered sex for a fee, and agreed to make a statement about it. The police then returned to the house, arrested the defendant, and charged her with prostitution. Her male victim was not arrested or charged with patronizing a prostitute.
In the landmark case of Yick Wo v Hopkins (118 US 356, 373-374) the Supreme Court declared that a constitutional law could be unconstitutional in its enforcement: "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circum *850 stances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.”
The test for unconstitutionally discriminatory enforcement of a law was clarified by the New York Court of Appeals in Matter of 303 West 42nd St. Corp. v Klein (46 NY2d 686, 693): "To invoke the right successfully, however, both the 'unequal hand’ and the 'evil eye’ requirements must be proven — to wit, there must be not only a showing that the law was not applied to others similarly situated but also that the selective application of the law was deliberately based upon an impermissible standard such as race, religion or some other arbitrary classification”.
To establish a violation of equal protection, then, one must show not only that the law is selectively enforced, but also that the selective enforcement is deliberately based upon an impermissible standard. In the cases before us, defendants argue that the law proscribing prostitution offenses (Penal Law, art 230) is selectively enforced by the Syracuse police and the Onondaga County District Attorney in that both routinely enforce section 230.00 against female prostitutes but not section 230.03 against their male patrons, and that this selective enforcement is deliberately based on an impermissible standard, namely sex or gender. Defendants further argue that sex is a suspect classification and, therefore, that discrimination on the basis of a suspect classification automatically triggers a strict scrutiny test, which requires the State to demonstrate a compelling need to make the discrimination it has made.*
Before dealing with the specific motions of the instant cases, we must address a threshold question. In seeking to show discriminatory enforcement of the law, may defendants combine patrons as well as prostitutes in the category of "others similarly situated”? In Matter of Dora P. (68 AD2d 719, 732), the Appellate Division, First Department, said no: "From this as a base, respondent argues that the 'unequal hand’ and the 'evil eye’ are demonstrated by the discrepancy, as shown by *851 statistics, between the number of females and males prosecuted. The short answer to this claim is that respondent lumps together two separate crimes in order to obtain a favorable statistical base. That prostitution and patronizing a prostitute are discrete crimes is apparent when consideration is given to the separate acts necessary to effect their commission. Indeed, so different are the crimes considered that the Legislature by a statute which became effective September 1, 1978 (L 1978, ch 627), divided the crime of patronizing a prostitute into four separate degrees with penalties ranging from a fixed maximum term of three months to a maximum indeterminate sentence of seven years. Thus, to compare the number of prosecutions for prostitution with the number of prosecutions for patronizing a prostitute is to have recourse to the 'unequal hand’ forbidden by Yick Wo (supra) and of which respondent so bitterly complains.” As the above quotation shows, the court attached considerable significance to the fact that the crime of patronizing a prostitute was divided into four separate degrees. However, examination of the four statutes shows that they are differentiated, not on the basis of the conduct described, but on the basis of the participants’ ages. For example, section 230.04 of the Penal Law reads as follows: "A person is guilty of patronizing a prostitute in the third degree when, being over twenty-one years of age, he patronizes a prostitute and the person patronized is less than seventeen years of age. Patronizing a prostitute in the third degree is a class A misdemeanor.”
The court in Matter of Dora P. (supra) also based its conclusion on its consideration of the "separate acts necessary to effect their commission” but did not mention what those separate acts were. If we compare section 230.00 (prostitution) with section 230.02 (patronizing a prostitute; definitions), we find that the only significant difference in the proscribed behavior is that the prostitute sells sex and the patron buys it. Neither gender nor solicitation is a differentiating factor. Professor Hechtman in his Practice Commentary (McKinney’s Cons Laws of NY, Book 39, Penal Law, § 230.03, p 173) refers to prostitution and patronizing as "reciprocal offenses.” Changes in the Penal Law since 1964 indicate that the Legislature intended to establish parity in the sanctions imposed for prostitution and patronizing a prostitute. Moreover, at a time when prostitution was a phase of the former vagrancy statute (Code Grim Pro, § 887, subd 4), the New York courts *852 were divided on whether it embraced both the patron and the prostitute, which suggests that some courts have considered prostitution and patronage two facets of a single offense (see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 230.02, p 171).
Considering the actual conduct of the prostitute and patron, we would probably be led to the same conclusion that Judge Wadhams reached 60 years ago in People v Edwards (180 NYS 631, 635): "The court is aware that it has been the custom heretofore followed to arrest the women and let the men go; but the time has come when the custom cannot longer be permitted to continue. Men caught with women in an act of prostitution are equally guilty, and should be arrested and held for trial with the women. The law is clear, and the duty of the police is to act in pursuance of the law. The practical application of the law as heretofore enforced is an unjust discrimination against women in the matter of an offense which, in its very nature, if completed, requires the participation of men. Is the public purpose not to enforce the law? If so, it is hypocrisy to permit the law to remain upon the statute books. As long as the law is upon the statute books, it must be impartially administered without sex discrimination.”
Tussman and tenBroek in their article (The Equal Protection of the Laws, 37 Cal L Rev 341, 346) concluded that to find the test of similarity which determines the reasonableness of a classification, "we must look beyond the classification to the purpose of the law. A reasonable classification is one which includes all persons who are similarly situated with respect to the purpose of the law”. Hechtman in his Practice Commentary (McKinney’s Cons Laws of NY, Book 39, Penal Law, § 230.02, pp 171, 172) writes as follows: "The reasons that were most vigorously advanced for imposing criminal sanctions upon the patron were (1) that to penalize the prostitute alone is unjust, and (2) that the dual proscription should aid in the curtailment of prostitution and, to that extent, in the reduction of venereal disease also.”
Thus, both sections 230.00 and 230.02 are intended to curtail prostitution by imposing sanctions against the patron as well as the prostitute, and thus it is reasonable to combine both in the category of "others similarly situated.”
Turning now to the specific relief requested by the defendants, we deal first with the motion to dismiss the accusatory *853 instruments. If defendants can establish that "conscious, intentional discrimination” exists, then they will be entitled to a dismissal of the prosecution as a matter of law (People v Utica Daw’s Drug Co., 16 AD2d 12, 19). The burden of proof here is heavy partly because there is a presumption that the enforcement of the laws is undertaken in good faith and also because the authorities must be allowed latitude in making law enforcement decisions (for example, selective enforcement might occur because of limited manpower or other resources, or to test a statute or new regulation, or as an efficient way to deter potential transgressors, or because only serious violations are being prosecuted or those that occur in places where violations are very frequent) (Matter of 303 West 42nd St. Corp. v Klein, 46 NY2d 686, 694, supra).
However, the scope of prosecutorial discretion is not unlimited. Though the burden is heavy, it is not insupportable. Recognizing that "law enforcement officials are unlikely to avow that their intent was to practice constitutionally proscribed discrimination”, the Court of Appeals has indicated that proof of discriminatory intent may appear "from a convincing showing of a grossly disproportionate incidence of nonenforcement against others similarly situated” (Matter of 303 West 42nd St. Corp. v Klein, supra, at p 695).
The court finds that, at present, defendants have not presented evidence sufficient to prove conscious, intentional discrimination on the part of the Onondaga County District Attorney or the Syracuse police and, therefore, denies as premature, defendants’ motion for an order dismissing the accusatory instruments, but denies it without prejudice.
Next, we consider whether defendants are entitled to an evidentiary hearing. The Court of Appeals has held that "an evidentiary hearing before a judicial tribunal is mandated whenever one asserting such a violation can demonstrate a reasonable probability of success on the merits of his claim” (Matter of 303 West 42nd St. Corp. v Klein, supra, at p 690). Again the court finds that at the present time defendants have not presented sufficient evidence to demonstrate a reasonable probability of success on the merits of their claim, and, therefore, denies as premature defendants’ motion for an order granting an evidentiary hearing, but without prejudice.
Finally, we deal with defendant’s motion for discovery and inspection of statistical data relating to the arrest and prosecution of persons of prostitution-related offenses. The People *854 contend that such statistical data are not within the proper scope of either a bill of particulars or a discovery motion, that they are not contained in the litany of property discoverable upon demand under CPL 240.20 or upon court order under CPL 240.40, that they are not within the prosecutor’s possession, custody or control, that they are not Brady material because they are not relevant to defendants’ guilt or innocence of the crimes with which they are charged, and that they are otherwise obtainable by a subpoena duces tecum.
The court agrees with the People. Defendants’ request for statistical data does not fit under the categories of discoverable material described in CPL 240.20 and 240.40. Moreover, they are not discoverable on the authority of Brady v Maryland (373 US 83 because they do not address the guilt or innocence of the defendants. The Appellate Division, Fourth Department, has stated that the "claim of discriminatory enforcement should not be treated as a defense to the criminal charge * * * but should be treated as an application to the court for a dismissal or quashing of the prosecution upon constitutional grounds” (People v Utica Daw’s Drug Co., 16 AD2d 12, 15-16). The court, therefore, denies defendants’ motion for discovery and inspection of statistical data relating to the arrest and prosecution of persons for prostitution-related offenses.
Although defendants may not obtain the statistical data through the criminal discovery rules, they are not without recourse. The Freedom of Information Law (Public Officers Law, art 6, §§ 85-90) would seem to authorize disclosure of such material. If defendants should seek and obtain the data under the Freedom of Information Law, the court will allow them to renew their motions for an evidentiary hearing and for dismissal of the accusatory instruments, should they decide that such motions would be appropriate.
To summarize, then, the court denies defendants’ motions for dismissal of the accusatory instruments and for an evidentiary hearing, but without prejudice. The court also denies defendants’ motion for statistical data relating to persons arrested for prostitution-related offenses.

 Defendants cite Matter of Sontag v Bronstein (33 NY2d 197) as authority for regarding sex as a suspect classification. There seems to be some confusion over this issue: some courts read Reed v Reed (404 US 71) and Frontiero v Richardson (411 US 677) as supporting the proposition that sex is a suspect classification; others read them differently. See Justice Powell’s opinion concurring in the judgment in Frontiero (supra, at p 692); also, see, footnote 5 of Judge Jones’ opinion in Matter of Malpica-Orsini (36 NY2d 568, 583).