**John P. MACK, Plaintiff,**

**v.**

**UNITED STATES of America, FEDERAL BUREAU OF INVESTIGATION, Defendant.**

**No. 83 Civ. 5764 (PNL).**

United States District Court,
S.D. New York.

April 18, 1986.

Jack B. Solerwitz, Mineola, N.Y., for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., New York City, Harriet L. Goldberg, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This is an action against the United States and the Federal Bureau of Investigation ("FBI") for damages and injunctive

relief arising out of plaintiff John P. Mack's termination as an agent of the FBI. Plaintiff was terminated in part because a urinalysis revealed he had taken cocaine up to 24 hours before the test. Defendants move for summary judgment claiming that plaintiff's claims are groundless and that this court lacks subject matter jurisdiction.

## I. Facts

The following facts are either undisputed or taken as alleged by plaintiff. Until September 1983, plaintiff was employed as an FBI agent in New York. On July 13, 1983, he was interviewed during an internal FBI investigation because of his association with another FBI agent who was suspected of dealing in drugs. At the interview, he was told that he was suspected of drug use and asked to submit to a polygraph and urinalysis and provide sworn statements. That same day, plaintiff gave a urine sample and signed sworn statements denying the use of any narcotics while a FBI agent. He also signed a form granting consent to the urinalysis. Although plaintiff initially stated in a deposition that he was not forced to give the urine samples and did so voluntarily, he now contends that he was coerced into submitting to the tests by being told that a refusal would be held against him.

The urinalysis revealed the presence of an element of cocaine as well as cocaine itself, indicating drug use within the past 12–24 hours. Plaintiff was informed of these results and later on July 15, signed another sworn statement that he had no explanation for the results and that he was not under any doctor's prescription. In a letter dated July 29, 1983, plaintiff was advised that the FBI was considering firing him for his drug use and lack of candor. Through his attorney, plaintiff responded to these charges in a letter dated August 11, 1983, arguing that his dismissal was unjustified. On September 9, 1983, the FBI informed him he was terminated and that he could appeal to the Director of the FBI, which plaintiff declined to do.

The initial complaint asserted subject matter jurisdiction under 28 U.S.C. § 1331, the Constitution, and 5 U.S.C. § 5596, and sought $1 million compensatory damages and $3 million punitive damages. An amended complaint adds a claim of jurisdiction based primarily on the Federal Torts Claim Act ("FTCA"). In essence, plaintiff contends he was forced to give a urine sample, improperly terminated without an opportunity to be heard and wrongfully stigmatized in violation of his Fifth Amendment property and liberty interests, his rights under the Fourth Amendments and his common law right of privacy. All of these claims fail as a matter of law.

## II. Discussion

### A. Sovereign Immunity

■ It is well settled that the United States or an agency thereof is subject to suit only to the extent that Congress waives its sovereign immunity.[1]

**1.** The complaint seeks relief under *inter alia,* the FTCA. As discussed below, although the FTCA constitutes a waiver of sovereign immunity for certain state torts, plaintiff has no viable claim for relief under this Act.

The complaint also asserts jurisdiction based on the Back Pay Act, 5 U.S.C. § 5596, although plaintiff does not appear to press this claim in his motion papers. In any event, this claim fails either because the court has no jurisdiction to award plaintiff damages under this Act or because plaintiff has no cause of action for back pay under the Act.

The Back Pay Act grants an employee a cause of action for back pay if he is subjected to "unjustified or unwarranted personnel action" "under applicable law, rule, regulation or collec-

tive bargaining agreement." 5 U.S.C. § 5596(b)(1). Under the Tucker Act, 28 U.S.C. § 1346(a)(2), the district court has concurrent jurisdiction with the Court of Claims for actions based on Acts of Congress, the Constitution or agency regulations for amounts not exceeding $10,000; jurisdiction for claims exceeding $10,000 lies exclusively with the Claims Court. See *Doe v. Department of Justice,* 753 F.2d 1092, 1101 (D.C.Cir.1985). Although plaintiff's complaint for $1 million compensatory damages does not specify how much of that claim is for back pay, it surely exceeds $10,000; this court lacks jurisdiction to hear the claim. See *id.; Bruzzone v. Hampton,* 433 F.Supp. 92, 95 (S.D.N.Y.1977).

To the extent that plaintiff's back pay claim is less than $10,000, it fails as a matter of law. To

As to his constitutional claims, none of the statutes asserted in the complaint presents a basis for finding a waiver of sovereign immunity. Neither the federal Constitution nor the general federal question jurisdictional statute, 28 U.S.C. § 1331, constitutes a waiver by the United States of its sovereign immunity.[2] See *Keene Corp. v. United States,* 700 F.2d 836, 838 n. 3 & 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Doe v. Civiletti,* 635 F.2d 88, 94 (2d Cir.1980); *Birnbaum v. United States,* 588 F.2d 319, 327–28 (2d Cir.1978). Nevertheless, even assuming the United States has waived its sovereign immunity as to the constitutional claims, plaintiff has no basis for relief under the Fifth and Fourth Amendments.

### B. *Fifth Amendment Due Process Claims*

A Government employee has a protected property interest in his employment if he has an expectation of continued employment guaranteed by a statute, contract or policy. See *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Roth v. Board of Regents,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct.

2694, 33 L.Ed.2d 570 (1972); *Doe v. Department of Justice,* 753 F.2d 1092, 1100 n. 8 (D.C.Cir.1985). As an FBI agent, plaintiff had no statutory right to continued employment. Although competitive civil service employees may be discharged "only for such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a); see *id.* at § 7511(a) (defining employees covered), FBI agents are specifically excepted from competitive civil service under 28 U.S.C. § 536.[3] As an excepted service employee, plaintiff could be discharged with or without cause. See *Doe v. Department of Justice,* 753 F.2d at 1100; *Carter v. United States,* 407 F.2d 1238, 1242 (D.C. Cir.1968). He also had no statutory right to any particular pretermination procedures or to judicial or administrative review of the termination decision. See *Williams v. Internal Revenue Serv.,* 745 F.2d 702, 704 (D.C.Cir.1984) (per curiam); *Schwartz v. Department of Transportation,* 714 F.2d 1581, 1582 (Fed.Cir.1984); *cf.* 5 U.S.C. §§ 4303(e), 7513, 7701, 7703 (granting preference eligible or competitive service employees various procedural rights for claims of unjust dismissal).

Plaintiff argues that he was not granted the procedural rights guaranteed him under the FBI's internal disciplinary

prove a claim under the Back Pay Act, an employee must show that the personnel action violated some statute or regulation. See *United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir. 1983); *Crimaldi v. United States,* 651 F.2d 151 (2d Cir.1981). As shown below, an FBI agent has no right to continued employment nor to any pretermination procedures. No action for damages lies under the Back Pay Act.

2. In his motion papers, plaintiff argues that the United States waived its sovereign immunity as to liability for constitutional torts under a 1974 amendment to the FTCA contained in 28 U.S.C. § 2680(h) which provides, in essence, that the Government shall be liable for the intentional torts of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" if committed by federal officers. There is nothing in the language of this amendment or the cases construing it to support plaintiff's argument.

Plaintiff cites two cases, *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Brown v. United States,* 653 F.2d 196 (5th Cir.

1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982) which, despite his assertions to the contrary, directly refute his position. *Carlson* holds that a plaintiff has a *Bivens* remedy against an individual officer even though the officer's conduct would give rise to a cause of action against the United States under the intentional torts provision of the FTCA. The Court noted that actions under the FTCA must assert claims actionable under the relevant state law. 446 U.S. at 23, 100 S.Ct. at 1474, see also *id.* at 28 n. 1, 100 S.Ct. at 1476 n. 1 (Powell, J., concurring). In *Brown,* 653 F.2d at 201, the Fifth Circuit dismissed plaintiff's constitutional claims against the United States and specifically held that the 1974 amendment in § 2680(h) did not constitute a waiver of sovereign immunity as to constitutional torts.

3. Although certain military veterans of the excepted service are entitled to protections similar to those accorded members of the competitive civil service, see, e.g., 5 U.S.C. §§ 2108, 7511(a)(1)(B), plaintiff does not contend that he qualifies for such benefits.

procedures because he was not given a copy of the urine test results. It appears, however, that he was accorded all the procedural rights he was entitled to under the agency's internal procedures. These procedures entitle an employee to notice of the charges against him and an opportunity to respond.[4] Plaintiff does not dispute that he was given such notice and opportunity to respond. The internal disciplinary procedures do not require the agency to furnish plaintiff with copies of the test results. Plaintiff has no valid claim that agency rules were violated. Accordingly, plaintiff cannot make out a claim for violation of his Fifth Amendment property rights.

Plaintiff also has no claim for violation of his due process liberty interest. In order to make out a liberty interest claim for injury to reputation, a plaintiff must show, *inter alia,* that the defendant published or otherwise disseminated false or defamatory information. See *Loudermill v. Cleveland. Bd. of Educ.,* 470 U.S. 532, 105 S.Ct. 1487, 1496 n. 13, 84 L.Ed.2d 494 (1985); *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447 (2d Cir.1980); *Gentile v. Wallen,* 562 F.2d 193, 197 (2d Cir.1977). Although plaintiff contends that the alleged false charges stigmatized his reputation, he does not claim that defendants published or disseminated any of these charges.

### C. *Fourth Amendment Claim*

Plaintiff argues that the FBI's request for a urine sample was an unreasonable search violative of the Fourth Amendment. This argument is without merit.

Even assuming that the requirement of a urine sample constitutes a search, see *Shoemaker v. Handel,* 619 F.Supp. 1089, 1098 (D.N.J.1985); *Storms v. Coughlin,* 600 F.Supp. 1214, 1218 (S.D.N.Y.1984), the Fourth Amendment prohibits only unreasonable searches. *Security & Law Enforcement Employees v. Carey,* 737 F.2d 187, 201 (2d Cir.1984). "To determine reasonableness, the court must balance the intrusiveness of the search on the individual's fourth amendment interests against its promotion of legitimate governmental interests." *Id.;* see *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Factors to consider are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell,* 441 U.S. at 559, 99 S.Ct. at 1884; see *Security & Law Enforcement Employees,* 737 F.2d at 201.

Taking into consideration all these factors, the FBI's request for the urine sample was not an unreasonable search. First, collecting a urine sample is minimally intrusive. See *United States v. Ramsey,* 431 U.S. 606, 618 n. 13, 97 S.Ct. 1972, 1979 n. 13, 52 L.Ed.2d 617; *Shoemaker,* 619 F.Supp. at 1101. In addition, this search was not conducted in an objectionably in-

---

**4.** The FBI Personal Conduct Policy Memorandum (Defendants' Exhibit E attached to affidavit of Charles E. Mandigo), provides for the following relevant procedures in investigating allegations of employee misconduct:

An administrative inquiry shall be conducted which shall include an opportunity for employees against whom allegations are made to furnish information. Each employee interviewed shall be informed of the general nature of the allegations that have prompted the inquiry. The inquiry shall not be complete until the specific charge(s) that may justify disciplinary action is made known to the employee who may be disciplined and the employee is afforded reasonable time to answer the specific charge(s). An employee may be required to answer orally and/or in writing

to the official designated to conduct the inquiry....

.... If ... removal is proposed for any employee, the Assistant Director, Administrative Services Division, shall notify the employee in writing of the proposed disciplinary action and the specific reasons and furnish other guidance as may be required....

.... Disciplinary action may be taken only on the following conditions: the action was based on a specific charge(s) which previously was made known to the employee or reasonable efforts were made to notify the employee; the employee was afforded an opportunity to answer the specific charge(s); and, the employee's answer, if any, is included in the record.

trusive manner, as in *Storms*, 600 F.Supp. at 1222 where the urine sample was collected from a prisoner in view of others. The collection of a urine sample has little in common with stomach pumping or body cavities' searches (or even with the taking of a blood sample, which requires the infliction of an injury, albeit a small one). It is even less intrusive than a fingerprint which requires that one's fingers be smeared with black grease and pressed against a paper. A urine sample calls for nothing more than a natural function performed by everyone several times a day—the only difference being the collection of the sample in a jar. Measured against the vital national interest of assuring that FBI agents are not involved in drugs, the claim that such a search is unreasonable is a mockery.

■ The scope of the intrusion must also "be viewed in the context of the individual's legitimate expectation of privacy." *Security & Law Enforcement Employees*, 737 F.2d at 201. Although plaintiff may have had a generalized expectation of privacy as to his private affairs, see *McDonell*, 612 F.Supp. at 1127, he had a diminished expectation in light of his position as an agent. See *Security & Law Enforcement Employees*, 737 F.2d at 202; *Shoemaker*, 619 F.Supp. at 1102 (jockeys as members of strictly regulated industry have diminished expectation of privacy). Well before this incident occurred plaintiff was advised of the FBI's strong interest in assuring that its agents' personal and professional affairs are beyond reproach. The FBI Personal Conduct Policy Memorandum dated May 15, 1981 (Defendants' Exhibit E, attached to Affidavit of Charles Mandigo) stated that:

> In addition, the FBI must be concerned with the employees' private as well as public personal conduct when such conduct does or could cause impairment of the FBI's efficiency or effectiveness. For example, any conduct which could render an employee vulnerable to induce-

ments to violate law, Department of Justice or FBI rules, regulations, policy or the oath of office is prohibited at all times.

Finally, the FBI has a compelling interest in assuring that its agents are not involved in drugs. While all private employers may have a generalized desire to know of their employees' drug use which could decrease efficiency, the FBI has far more urgent and compelling needs for such information. FBI agents are privy to highly classified information. Any involvement of an FBI agent with drugs, no matter how small, exposes him to risks of extortion that could jeopardize the national security. Also, since the FBI is charged with responsibility for enforcement of the federal drug laws, illegal drug use by agents risks to corrupt and compromise the agency's discharge of those duties. Furthermore, drug use by an agent could affect the success of an operation implicating important national security law enforcement objectives and could pose risk of injury to other agents working with him. Given these considerations that are vital to national security, I can see no reasonable argument that the FBI committed an unreasonable search in violation of the Fourth Amendment in requesting a urine sample of an agent.

### D. The FTCA, 28 U.S.C. § 1346(b)

■ The FTCA, 28 U.S.C. § 1346(b), constitutes a waiver of sovereign immunity for certain torts committed by federal agents. See *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 104–05 (2d Cir.1981); *Birnbaum v. United States*, 588 F.2d 319, 327–28 (2d Cir.1978). To collect damages under the FTCA, a plaintiff must allege a common law tort actionable under the law of the place where the tortious act occurred. See 28 U.S.C. § 1346(b); *Contemporary Mission*, 648 F.2d at 104–05 n. 9. Plaintiff claims the Government is liable for the common law tort of invasion of privacy.[5]

---

**5.** Plaintiff also argues that the Government is liable for tortious interference with his employment. He cites no authority to support this assertion and it is not clear what he is claiming. To the extent he is arguing breach of employment contract, this court has no jurisdiction to

New York, however, has never recognized the common law tort of invasion of privacy. In 1902, the New York Court of Appeals held in *Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538, 556, 64 N.E. 442, 447 (1902), that there was no common law right of privacy in New York. Shortly thereafter, the New York legislature passed an abbreviated privacy act, N.Y.Civ.Rts.Law §§ 50, 51, which prohibits unconsensual commercial use of an individual's name or likeness. Since the enactment of these provisions, New York courts have consistently refused to recognize a cause of action for invasion of privacy beyond that provided in the Civil Rights Act. See, e.g., *Wojtowicz v. Delacorte Press, Inc.*, 43 N.Y.2d 858, 860, 403 N.Y.S.2d 218, 219, 374 N.E.2d 129, 130 (1978); *Flores v. Mosler Safe Co.*, 7 N.Y.2d 276, 280, 196 N.Y.S.2d 975, 977, 164 N.E.2d 853, 855 (1959); *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 358, 107 N.E.2d 485 (1952); but see *Doe v. Roe*, 42 A.D.2d 559, 345 N.Y.S.2d 560, 562 (1st Dept.1972) (recognizing "expanded recognition" of invasion of privacy actions), *aff'd*, 33 N.Y.2d 902, 352 N.Y.S.2d 626, 307 N.E.2d 823 (1973), *cert. denied*, 420 U.S. 307, 95 S.Ct. 1154, 43 L.Ed.2d 213 (1975).

In 1978, the Second Circuit held in *Birnbaum v. United States*, 588 F.2d 319 (2d Cir.1978) that private citizens seeking damages against the United States for unauthorized opening of their mail stated a cause of action under New York common law for invasion of privacy. It reasoned that *Roberson* was decided in, and should be limited to, the context of commercial misapropriation. *Id.* at 323. Noting that a majority of states recognize a common law right to be free from unwarranted intrusions into an individual's personal affairs, the court concluded that the New York Court of Appeals would probably do likewise if presented with the appropriate case. *Id.* at 325. A few district courts have followed *Birnbaum* in predicting future

decisions of New York courts. See *Spock v. United States*, 464 F.Supp. 510, 513 (S.D. N.Y.1978) (federal government's unauthorized interception of citizen's wire and telegraph communications); *Socialist Workers' Party v. Attorney General*, 463 F.Supp. 515, 524 (S.D.N.Y.1978) (relying on *Birnbaum*, plaintiff association had cause of action where government infiltrated and eavesdropped on private meetings and read and copied private documents).

Since *Birnbaum*, however, the New York Court of Appeals has consistently stated that there is no common law cause of action for invasion of privacy in New York, save that provided for in the New York Civil Rights Act. See, e.g., *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 490 N.Y. S.2d 735, 739, 480 N.E.2d 349, 353 (1985); *Stefano v. New Group Pubs., Inc.*, 64 N.Y.2d 174, 485 N.Y.S.2d 220, 223, 474 N.E.2d 580, 583 (1984); *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 449 N.Y. S.2d 941, 943, 434 N.E.2d 1319 (1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983). Although these cases generally involved commercial misappropriation or false publication claims, other New York courts have consistently refused to recognize a common law right of privacy in a variety of contexts. See, e.g., *Simpson v. New York City Transit Auth.*, 112 A.D.2d 89, 491 N.Y.S.2d 645, 647 (1st Dept. 1985) (disclosure of confidential information by the Transit Authority); *Carpenter v. City of Plattsburgh*, 105 A.D.2d 295, 484 N.Y.S.2d 284, 286 (4th Dept.1985) (disclosure of personnel records by the City); *MacDonald v. Clinger*, 84 A.D.2d 482, 446 N.Y.S.2d 801, 803 (4th Dept.1982) (doctor's disclosure of confidential information to patient's wife); *Novel v. Beacon Operating Corp.*, 86 A.D.2d 602, 446 N.Y.S.2d 118, 119 (2d Dept. 1982) (landlord's unauthorized entry into apartment and taking of pictures therein). See also *People v. Fitzgerald*, 101 Misc.2d 712, 422 N.Y.S.2d 309, 312–123 (Westchester Co.1979) (regarding

---

hear the claim. See 28 U.S.C. § 2680(h). Moreover, because his employment was terminable at will, plaintiff has no grounds to argue unjust dismissal under New York law. See *Steward v.*

*World-Wide Automobiles Corp.*, 20 Misc.2d 188, 189 N.Y.S.2d 540, 549 (Queens Co.1959); *Harris v. Home Indemnity Co.*, 16 Misc.2d 702, 185 N.Y.S.2d 287, 288 (N.Y.Co.1959).

existence of parent-child privilege where the court noted that New York recognizes only a statutory and not a common law right of privacy); *In re Dora P.*, 68 A.D.2d 719, 418 N.Y.S.2d 597, 603 n. 2 (1st Dept. 1979). Moreover, in *MacDonald, supra,* 446 N.Y.S.2d at 803, the Appellate Division specifically rejected the federal courts' prediction of New York law. Therefore, it appears that the New York courts have not followed the direction predicted by *Birnbaum.*

Even if *Birnbaum, Spock* and *Socialist Workers' Party* were persuasive authority in New York, I believe it would be inappropriate to extend their reach to these facts. Those cases concerned government interference with the private communications and activities of private citizens. Here the alleged invasion of privacy consists of a minimally intrusive investigation by a federal agency entrusted with maintaining the national security of an employee in a critically sensitive post. I think it most unlikely that the courts of New York would hold that the FBI had violated New York law by such acts, even if New York courts recognized an actionable right of privacy.[6]

Moreover, *Birnbaum* and the other cases relied in part on the existence of New York criminal statutes, N.Y.Penal Law Art. 250, which prohibit conduct basically identical to that engaged in by the defendants in those cases—unauthorized wiretapping and interception of private mail. Plaintiff has cited no comparable New York authority which makes illegal the conduct at issue here.

In sum, the FBI's request of its agent for a urine sample as a test of drug use cannot be seen as an unreasonable intrusion into plaintiff's privacy. The FBI has a compelling security interest in assuring that its agents, who have access to highly classified information, are not subject to compromise. Drug use by FBI agents would expose the national security to a high risk of breach. To the extent that these considerations require an FBI agent to choose between submitting to a urine test or having his refusal used against him, this is minimally intrusive and necessary to the national security. It does not constitute a tort under either New York law or under the Constitution.

\*   \*   \*

Defendants' motion for summary judgment is granted.

SO ORDERED.

---

**6.** Even if a state's courts or legislature purported to do so, a question would surely arise whether the Federal Tort Claims Act, in spite of its broad language, should be construed to go so far in subjecting the Federal Government to state law. If, for example, a state made it a violation of the right of privacy for any prospective employer to conduct a background security investigation of a prospective employee, I cannot conceive that the FTCA would be held to bar the Federal Government from screening candidates for employment by the CIA, the FBI or the State Department or for presidential appointment to the Cabinet or high positions in the diplomatic corps, the defense, the national security, the judiciary and others.