THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* UTICA DAW'S DRUG COMPANY, INC., Appellant.

Fourth Department, February 22, 1962.

*Abelove & Myers* (*Milton A. Abelove* and *Rocco S. Mascaro* of counsel), for appellant.

*Arthur A. Darrigrand, District Attorney,* for respondent.

HALPERN, J.  This case presents the question of the proper way in which to deal with a claim by a defendant in a criminal case that the law has been enforced in a discriminatory manner against him in violation of the equal protection clauses of the State and Federal Constitutions.

The defendant maintains a drugstore in the City of Utica, New York, which operates under a policy of selling at reduced prices, generally characteristic of stores known as " cut-rate " stores or discount houses.  The drugstore is open on Sunday as all drugstores are permitted to be under the Sunday statute (Penal Law, § 2147).  However, the items which drugstores are permitted to sell on Sunday are limited by the statute.  The defendant was indicted for violation of the Sunday statute, it being charged that defendant on Sunday, December 18, 1960, " unlawfully did publicly sell and expose for sale certain property, to wit, a pair of gloves, a doll, a brown belt and a drinking cup " in violation of section 2147 of the Penal Law.

The defendant did not contest the charge that the enumerated items had been sold and offered for sale in its store but contended that similar items had been sold and offered for sale on Sunday throughout the City of Utica and County of Oneida by all other drugstores and that other items, the sale of which on Sunday was prohibited by section 2147 of the Penal Law, had been regularly offered for sale and sold in other types of stores, without any attempt on the part of the public authorities to interfere with the sale or to prosecute the vendors.  Only the defendant and one other company (not a drugstore) also engaged in a discount operation were prosecuted.  The defendant maintained that the prosecution was part of a discriminatory design aimed at the defendant and others engaged in the same type of " cut-rate " operation.  It maintained that the public authorities intentionally discriminated against that class and allowed others

outside the class to continue to sell the forbidden items in violation of the Sunday law without molestation.

The trial court, with the acquiescence of the District Attorney, held that the defendant's contention, if established, would constitute a good defense to the criminal charge and it submitted the case to the jury accordingly. It left it to the jury to decide as a question of fact whether the defendant's proof established "a clear and intentional discrimination against this defendant and against those in the same class." At the request of the defendant, the court charged in language taken from *Yick Wo* v. *Hopkins* (118 U. S. 356, 373–374): "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." The jury found the defendant guilty and this appeal followed.

Under the theory upon which the case was tried and submitted, the judgment of conviction cannot be permitted to stand. While the court accurately stated the principle of *Yick Wo* v. *Hopkins* and the cases which have followed it, it did not consistently apply the principle during the course of the trial. The defendant attempted to prove that 21 other drugstores in the City of Utica had engaged in offering for sale and in selling forbidden items on Sunday, December 18, 1960, and on other Sundays but the court sustained objections to most of the questions designed to elicit this proof. While the court allowed the defendant to prove that the stores had been open on Sunday, it sustained objections to questions as to the items which they had offered for sale on Sunday. The court also sustained objection to a question designed to show that a witness who was in the business of selling flags and decorations, advertised that his business was open on Sunday and that in fact he had sold flags and decorations on Sunday. Similar objections were sustained with regard to proof of sales on Sunday by various other types of stores.

It also appeared upon the trial that, after the defendant's arrest on December 18, the defendant engaged a private detective, formerly a member of the police department, to make an investigation on its behalf. On the following Sunday, December 25, he found that throughout the City of Utica in various drugstores which he listed by name and address, he was able to purchase and did purchase items forbidden for sale on Sunday under the statute. He also made purchases of forbidden items at smoke shops, news stores and grocery stores. The private

detective then, at the request of the defendant's counsel, went to the Clerk of the City Court and offered to sign and swear to depositions with respect to each of the purchases made by him but the secretary of the City Court Judge who handled the matter declined to accept the depositions. Proof of these facts was admitted upon the trial. However, the court refused to allow the defendant's counsel to prove that he had subsequently written a letter to the Chief of Police of the city, a copy of which was marked for identification, advising of the purchases made by the investigator and offering to have the investigator sign and swear to depositions with respect thereto and requesting the Chief of Police to have officers in his department execute the necessary informations and obtain warrants of arrest. Objection to the admission of the letter into evidence was sustained and the Chief of Police was not allowed to testify with respect to its receipt and his failure to take action thereon.

It is thus apparent that while the court recognized the validity of the defense put forward by the defendant, it prevented the defendant from introducing material evidence which would have tended to support the defense. The court held that the evidence was irrelevant, upon the authority of *People* v. *Friedman* (302 N. Y. 75, appeal dismissed 341 U. S. 907); *Snowden* v. *Hughes* (321 U. S. 1) and other cases holding that nonenforcement of itself is not sufficient to establish discrimination. In so ruling, the court misconstrued the cases upon which it relied. While it is true that they held that mere nonenforcement is insufficient of itself to establish discrimination, they did not hold that proof of nonenforcement is not admissible in evidence, in a case in which the defendant asserts that there had been intentional discrimination. It is true that in order to find a violation of the constitutional guarantee, the trier of the facts must be satisfied that there was intentional discrimination, and not mere laxity in enforcement, but in the effort to persuade the trier of the facts of the truth of its ultimate contention, the defendant is entitled to introduce evidence of nonenforcement as relevant evidence bearing upon that contention. (*People* v. *Harris,* 182 Cal. App. 2d 837; 5 Cal. Rep. 852.)

We have therefore concluded that, upon the basis upon which the case was tried and submitted, the judgment of conviction must be reversed because of errors in the exclusion of evidence.

However, we believe that the entire approach to the problem, adopted by the trial court with the approval or acquiescence of the counsel on both sides, was erroneous and that a different approach should be followed, upon the remand of the case. The claim of discriminatory enforcement should not be treated as

a defense to the criminal charge, to be tried before the jury and submitted to it for decision, but should be treated as an application to the court for a dismissal or quashing of the prosecution upon constitutional grounds. Insofar as a question of fact may be involved, the court should take the evidence in the absence of the jury and should decide the question itself. If the court finds that there was an intentional and purposeful discrimination, the court should quash the prosecution, not because the defendant is not guilty of the crime charged, but because the court, as an agency of government, should not lend itself to a prosecution the maintenance of which would violate the constitutional rights of the defendant.

As was said in a concurring opinion by Mr. Justice ROBERTS speaking for himself and for Mr. Justice BRANDEIS and Mr. Justice STONE in a different context: "It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law * * * [It] should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention" and further: "Recognition of the defense * * * as belonging to the defendant and as raising an issue for decision by the jury called to try him upon plea of the general issue, results in the trial of a false issue wholly outside the true rule which should be applied by the courts." (*Sorrells* v. *United States*, 287 U. S. 435, 457, 458.)

These statements were made in a case involving the defense of entrapment. They are applicable a fortiori to the problem here presented. The approach for which Mr. Justice ROBERTS argued in his concurring opinion is much more appropriate to the type of problem with which we are here concerned than it is to a claim of entrapment. An argument can be that entrapment is a true defense establishing that the defendant was not in fact guilty of the crime charged within the contemplation of the statute defining the crime; that was the position taken by the majority in the *Sorrells* case. No such argument can be made as to the claim of discriminatory enforcement. All the elements of the crime are present; the only question is whether the prosecution for the crime should be barred because it would violate the constitutional guarantee of equal protection of the laws to allow it to proceed. In the recent case of *Sherman* v. *United States* (356 U. S. 369) the majority found it unnecessary to decide whether the approach advocated by Mr. Justice ROBERTS as to the claim of entrapment should be adopted but in a strong concurring opinion by Mr. Justice FRANKFURTER, in which Mr. Justice DOUGLAS, Mr. Justice HARLAN and Mr. Justice

Brennan joined, the court was urged to adopt the Roberts' approach. " [S]uch a judgment, aimed at blocking off areas of impermissible police conduct, is appropriate for the court and not the jury " (p. 385).

The equal protection clause of the Constitution applies to all agencies of government, including the courts (*Shelley* v. *Kraemer*, 334 U. S. 1). " [T]he prohibitions of the [Fourteenth] Amendment refer to all the instrumentalities of the State, to its legislative, executive, and judicial authorities, and, therefore, whoever by virtue of public position under a state government deprives another of any right protected by that amendment * * * ' violates the constitutional inhibition; and * * * his act is that of the State.' " (*Chicago, Burlington & Quincy R. R. Co.* v. *Chicago,* 166 U. S. 226, 233–234; and, see, comment in 59 Yale L. J., p. 358.)

Treating the claim of discriminatory enforcement as a motion to quash the prosecution, addressed to the court, puts it in the same category as a motion to suppress illegally seized evidence under the Federal criminal procedure (Fed. Rules Crim. Pro., rule 41, subd. [e] or the similar procedure now mandated in the State courts under *Mapp* v. *Ohio* (367 U. S. 643).

While there is no statutory provision for the motion here suggested, there is ample precedent for the entertaining of a motion to quash a prosecution based upon constitutional grounds, for which no statutory provision has been made. Thus it was held in *People* v. *Glen* (173 N. Y. 395) that a motion to dismiss an indictment because it had been found without sufficient evidence, in violation of the State Constitution, would be entertained notwithstanding the fact that the statutory provision for motions to dismiss did not include this ground among the enumerated grounds. See, in this connection, the opinion of Judge Abraham Geller of the Court of General Sessions, entertaining a motion to suppress illegally seized evidence under *Mapp* v. *Ohio,* prior to the adoption of any implementing statute providing therefor (*People* v. *Gonzales,* 31 Misc 2d 486).

As the concurring opinions in the entrapment cases cited above strongly argue, matters of this kind should be dealt with by the court rather than the jury. This places the power and the responsibility where it belongs,— in the court. The claim of discriminatory enforcement does not go to the question of the guilt or innocence of the defendant, which is within the province of the jury. The question is rather whether in a community in which there is general disregard of a particular law with the acquiescence of the public authorities, the authorities should be allowed sporadically to select a single defendant or a single

class of defendants for prosecution because of personal animosity or for some other illegitimate reason. The wrong sought to be prevented is a wrong by the public authorities. To allow such arbitrary and discriminatory enforcement of a generally disregarded law is to place in the hands of the police and the prosecutor a power of the type frequently invoked in countries ruled by a dictator but wholly out of harmony with the principle of equal justice under law prevailing in democratic societies. The court is asked to stop the prosecution at the threshold, not because the defendant is innocent but because the public authorities are guilty of a wrong in engaging in a course of conduct designed to discriminate unconstitutionally against the defendant. Clearly, a contention of this kind is addressed to the court and should be passed upon by the court and not left to the jury.

In most cases in other jurisdictions, the claim of discriminatory enforcement has been raised in the past by actions in equity to enjoin the criminal prosecution (*Wade* v. *City and County of San Francisco,* 82 Cal. App. 2d 337; *City of Covington* v. *Gausepohl,* 250 Ky. 323; *Boynton* v. *Fox,* 60 F. 2d 851; cf. *Two Guys* v. *McGinley,* 366 U. S. 582). We see no reason why it may not be raised in the criminal proceeding itself by an appropriate motion, and we see many advantages in having it dealt with in that way by the court which has jurisdiction over the criminal charge.

As the court below found when it undertook to charge the jury upon the question of the burden of proof, there are well nigh insoluble problems if a claim of discriminatory enforcement is left to the jury. As to the conventional affirmative defenses in a criminal case, the burden is upon the defendant to come forward with some evidence making the defense one of the issues in the case but the burden of proof remains upon the People upon the whole case to establish the invalidity of the defenses beyond a reasonable doubt. This is the settled law as to the defense of self-defense and the defense of insanity (*People* v. *Egnor,* 175 N. Y. 419; *People* v. *Downs,* 123 N. Y. 558). If the claim of discriminatory enforcement were treated as a conventional defense, this would produce the anomalous result that the burden of proof would be upon the People to establish beyond a reasonable doubt that there had not been a discriminatory intention in bringing the prosecution, whereas, as a matter of sound principle, the burden should be upon the defendant, if he claims that there was intentional discrimination, to establish it by a clear preponderance of the proof. Furthermore if the claim were treated as a conventional defense, and the jury acquitted the defendant on the ground that the defense had been established, the acquittal would bar a further prosecution

of the defendant under the constitutional provision forbidding double jeopardy. This would be an unfortunate result since the State ought to have the right to reinstitute the prosecution of the defendant if it generalized its attack and sought, not to discriminate against a particular defendant, but to eliminate the general condition of wide-spread violation.

It may be noted that in the case of *Yick Wo* v. *Hopkins* (118 U. S. 356, *supra*) in which the principle forbidding discriminatory enforcement of the law was first laid down, the point was raised upon habeas corpus, and was heard and decided by the court.

The fact that the determination of the defendant's claim of discriminatory enforcement might require the taking of proof and the deciding of questions of fact does not take it out of the province of the court. Courts are frequently required to take proof with respect to applications in criminal cases addressed to the court. An application to suppress illegally seized evidence affords a ready illustration. Furthermore, in passing upon the constitutionality of legislation, courts frequently take evidence to illuminate or to enlarge judicial notice of the underlying facts in the light of which the Legislature acted (see Freund, "Review of Facts in Constitutional Cases" in Cahn [ed.], Supreme Court and Supreme Law, p. 47; Karst, "Legislative Facts in Constitutional Litigation" [Kurland ed.], 1960 Supreme Ct. Rev., p. 75).

Of course, we express no opinion as to whether the prosecution in the present case should be held to be a discriminatory one or not. That is for the trial court to decide after hearing all the evidence, including the evidence which was erroneously excluded upon the first trial and including any countervailing evidence which may be offered by the District Attorney. A heavy burden rests on the defendant to establish conscious, intentional discrimination, but if it succeeds in sustaining that burden, the defendant will be entitled to a dismissal of the prosecution as a matter of law. We believe this to be the necessary consequence of the principle of equal protection of the laws proclaimed in both the Federal and State Constitutions. The Constitution not only forbids discriminatory laws (making distinctions without rational basis [*McGowan* v. *Maryland,* 366 U. S. 420]), but it also forbids the discriminatory enforcement of nondiscriminatory laws (*People* v. *Friedman,* 302 N. Y. 75; *Yick Wo* v. *Hopkins,* 118 U. S. 356, *supra*; *Wade* v. *City and County of San Francisco,* 82 Cal. App. 2d 337; *City of Covington* v. *Gausepohl,* 250 Ky. 323). As LEARNED HAND, J. said in *East Coast Lbr. Term.* v. *Town of Babylon* (174 F. 2d 106, 112): "It has indeed been the

law for over sixty years that the [14th] Amendment covers the unequal enforcement of valid laws, as well as any enforcement of invalid laws ", citing *Yick Wo* v. *Hopkins* (*supra*).

The sufficiency of the claim of discriminatory enforcement as a bar to a criminal prosecution for violation of Sunday laws was recently passed upon by the United States Supreme Court (*Two Guys* v. *McGinley,* 366 U. S. 582, 588, *supra*). The plaintiff-appellant in that case had brought an action for an injunction against the District Attorney, asserting not only that the Sunday statute was unconstitutional but also that the District Attorney was enforcing the statute discriminatorily against the appellant. It is of interest to note that the appellant was the operator of a so-called discount house. The United States Supreme Court indicated that if a continuing threat of discriminatory enforcement were shown, an injunction would be granted, but the court noted that a new District Attorney had taken office and that the appellant had conceded that it had " no reason to believe and, therefore, does not aver that [the new District Attorney] will discriminatorily enforce [the] laws as did his predecessor " (n. 4, p. 588). The court therefore held that the matter was moot insofar as it was based on the former District Attorney's alleged discriminatory action in the past, except as to prosecutions still pending against the appellant's employees " initiated as the result of the alleged discriminatory action ". As to that, the Supreme Court held that the " employees may defend against any such proceeding that is actually prosecuted on the ground of unconstitutional discrimination " in the State court, and therefore the denial of injunctive relief by the Federal District Court in the exercise of discretion was not incorrect. (We take it that in referring to the fact that employees may " defend " the Supreme Court did not mean to prescribe the precise procedure to be followed in seeking to bar the prosecution in the State courts of Pennsylvania. For the reasons given earlier, we believe that, as a matter of State law, a motion to dismiss the prosecution is preferable to the interposing of an affirmative defense in the criminal proceeding, as a method of raising the question of unconstitutional discrimination.)

The courts in some States have indicated a reluctance to enjoin a criminal prosecution on the ground of unconstitutional discrimination, for fear that guilty persons would thereby escape prosecution and the flouting of the law would be encouraged (e.g., *Society of Good Neighbors* v. *Detroit Mayor,* 324 Mich. 22). This fear, in our opinion, is an unfounded one. As has been pointed out, the burden resting upon the defendant is a heavy one and, even if the defendant succeeds in sustaining it, he will not

be immune from a new prosecution, when and if the public authorities undertake a generalized enforcement of the law. Furthermore, even if the enforcement of a particular law is selective, it does not necessarily follow that it is unconstitutionally discriminatory. Selective enforcement may be justified when the meaning or constitutionality of the law is in doubt and a test case is needed to clarify the law or to establish its validity. Selective enforcement may also be justified when a striking example or a few examples are sought in order to deter other violators, as part of a bona fide rational pattern of general enforcement, in the expectation that general compliance will follow and that further prosecutions will be unnecessary. It is only when the selective enforcement is designed to discriminate against the persons prosecuted, without any intention to follow it up by general enforcement against others, that a constitutional violation may be found. (See generally, two excellent and comprehensive notes on this subject, one entitled "Discriminatory Law Enforcement and Equal Protection *from* the Law" in 59 Yale L. J. 354 and the other, "The Right to Nondiscriminatory Enforcement of State Penal Laws", 61 Col. L. Rev. 1103.)

For these reasons, the judgment of conviction should be reversed and new trial granted but the court below should, prior to the commencement of the new trial, entertain an application by the defendant to dismiss or quash the prosecution upon the grounds set forth by it in its offers of proof upon the first trial.

WILLIAMS, P. J., BASTOW, GOLDMAN and HENRY, JJ., concur.

Judgment of conviction unanimously reversed on the law and facts and a new trial granted.