IN THE MATTER OF: TEMPIE J. JOHNSON

No. 793SC541

(Filed 18 March 1980)

**1. Constitutional Law § 17; Insane Persons § 12— rights of procreation, marital privacy**

Procreation, together with marriage and marital privacy, are fundamental civil rights protected by the due process and equal protection clauses of the Fourteenth Amendment.

**2. Insane Persons § 12— sterilization of mental defective—unfitness to care for child—no presumption solely from mental retardation**

In a proceeding for the sterilization of a mentally defective person on the ground that she would probably be unfit to care for a child, there can be no presumption of unfitness founded solely on mental retardation; however, the burden on petitioner to show personality defects or traits of unfitness apart from retardation increases as the retardation ranges from severe to mild.

**3. Insane Persons § 12— sterilization of mental defective—unfitness to care for child—burden of proof**

In an involuntary sterilization proceeding based on the ground that the respondent because of mental deficiency would probably be unfit to care for a child, the courts in construing the phrase "care for a child" must find whether the evidence establishes a minimum standard of care consistent with both state interest and fundamental parental rights, and the petitioner has the burden of proving at least probable inability to provide a reasonable domestic environment for the child.

**4. Insane Persons § 12— sterilization of mental defective—unfitness to care for child—sufficiency of evidence**

The evidence was sufficient for the jury in a proceeding for the sterilization of respondent on the ground that, because of a mental deficiency which is not likely to improve materially, she would probably be unable to care for a child where petitioner offered proof by clear, strong and convincing evidence that, in addition to mild mental retardation, respondent over a period of years had exhibited emotional immaturity, the absence of a sense of responsibility, and a lack of patience with children, and had engaged in continuous nightly adventures with boyfriends followed by daily sleep and bedrest.

**5. Insane Persons § 12— sterilization of mental defective—admissibility of evidence**

> In an involuntary sterilization proceeding based on the ground that respondent because of mental deficiency would probably be unfit to care for a child, evidence concerning respondent's morals, sexual activity, and attitude toward birth control and her statements to a psychiatrist that in her youth she would get impatient and angry with children left in her care by her parents were relevant on the issues of fitness and care and whether respondent's condition was likely to improve materially.

APPEAL by respondent from *Fountain, Judge.* Judgment entered 6 February 1979 in Superior Court, CRAVEN County. Heard in the Court of Appeals 15 January 1980.

This is a proceeding under N.C. Gen. Stat. Ch. 35, Art. 7 for the sterilization of a mentally defective person. On a prior appeal this Court on 18 April 1978 ordered a new trial for errors in the instruction to the jury. 36 N.C. App. 133, 243 S.E. 2d 386 (1978).

The petition by the Craven County Department of Social Services alleges that "because of a physical, mental or nervous disease or deficiency which is not likely to materially improve, the respondent," age 23, "would probably be unable to care for a child or children." This is one of two grounds for sterilization provided for in N.C. Gen. Stat. § 35-43.

Attached to the petition was a letter to the Department from Dr. Paul Williams (Obstetrics and Gynecology) in which he noted that the respondent's Stanford Binet I.Q. was 40, and that in his opinion she was not capable of rearing or caring for children. He recommended permanent surgical sterilization.

In the District Court a judgment was entered ordering sterilization. Respondent appealed to the Superior Court.

At trial in Superior Court, the petitioner offered the following evidence:

Patricia Gavin testified that she had worked for the Department of Social Services for 12 years, that Gertrude Royal had been a foster parent for 10 years and had respondent Tempie J. Johnson under her care as a foster child for 10 years. Patricia Gavin further testified that when respondent was 18 years of age she was involved with several men but was unable either to understand birth control methods or to comprehend that she

could become pregnant from sexual intercourse. At the behest of Social Services, an intrauterine device was inserted but respondent had it removed. She had an abortion. Ms. Gavin observed her with small children in the home; she was not interested in the children and paid no attention to them. Ms. Gavin has the opinion that respondent was unable to care for a child.

Dr. John D. Ainslie, psychiatrist and Clinical Director of Neuse Medical Center, testified that he had known respondent since July 1978. He examined her on two occasions and evaluated her psychological tests. In his opinion, respondent has a mild mental retardation and needs someone to care for her and attend to her concerns. It was also his opinion that her sterilization would be for her own mental and moral improvement and for the public good. He noted that respondent was impatient and lost her temper, and that she had two boyfriends, one of which wanted to marry her. Respondent had further indicated to Dr. Ainslie that she would like to have children.

Gertrude Royal testified that respondent had been her foster child for 10 years and that in her observation, respondent went out every night, had boyfriends, came in later than she was supposed to, slept most of the day and refused to take birth control pills. Gertrude Royal further stated that respondent was able to help clean the house but that she did not have the patience to cook. Gertrude Royal would not leave respondent alone with a small child.

The jury answered the issue in favor of petitioner, and respondent appeals from the judgment ordering the sterilization operation.

*Beaman, Kellum, Mills & Kafer by Charles William Kafer for respondent appellant.*

*Ward and Smith by Michael P. Flanagan for petitioner appellee.*

CLARK, Judge.

We consider first the respondent's argument that the trial court erred in denying her motion for directed verdict at the close of all the evidence. In doing so we think it appropriate to make some analysis of the statutory scheme (North Carolina

General Statutes, Ch. 35, Art. 7, effective 1 January 1975), for involuntary sterilization of persons who are mentally ill or mentally retarded.

[1] Procreation, together with marriage and marital privacy, are recognized as fundamental civil rights protected by the due process and equal protection clauses of the Fourteenth Amendment. *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 2d 1010 (1967); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510 (1965); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). Where fundamental personal liberties are at issue the state may prevail only by demonstrating a compelling governmental interest, as for example, in the public health and welfare. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 2d 147 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed. 2d 600 (1969).

The North Carolina Supreme Court found that the hearing procedures provided for in the sterilization statutes (N.C. Gen. Stat. §§ 35-36 to 35-50) protected the due process rights of the respondent and that the statutory scheme was constitutionally valid. *In re Moore*, 289 N.C. 95, 221 S.E. 2d 307 (1976). The statutory scheme also survived a constitutionality attack in a Federal Court, except for subsection (4) of N.C. Gen. Stat. § 35-39, which provided that a petitioner should initiate proceedings, "[w]hen requested to do so in writing by the next of kin or legal guardian of such patient, resident of an institution, or noninstitutional individual." This subsection was held to be an arbitrary and capricious delegation of unbridled power. *N.C. Association for Retarded Children v. State*, 420 F. Supp. 451 (M.D. N.C. 1976).

Though the sterilization statutes have been determined to meet the tests of constitutionality, the absence of standards and statutory definitions requires that the courts construe and apply the statutory provisions to the evidence in each case so as to adequately protect the respondent's fundamental rights.

The statutory scheme provides in substance two bases for sterilization: (1) the respondent because of mental deficiency would probably be unfit to care for a child or children, and (2) the respondent would be likely to procreate a child or children who would probably have serious mental deficiencies. N.C. Gen. Stat. § 35-43. The second basis was involved in *Moore, supra.* The first

basis is involved in the case *sub judice*. The legislative dual pur-
poses, and compelling state interest, are, first, to prevent the
birth of a child that cannot be cared for by its parent, and, sec-
ond, to prevent the birth of a defective child.

Under the second basis, if requested, a hearing is required to
determine the respondent's ability to care for a child or children.
*Id.* The burden is on the petitioner (the State officer) to prove by
"clear, strong, and convincing" evidence that the respondent:

1. is a mentally ill or retarded person subject to the steriliza-
   tion statutes (Art. 7, *supra*);

2. has a physical, mental or nervous disease or deficiency;

3. the disease or mental deficiency is not likely to materially
   improve, and

4. would probably be unable to care for a child or children.

[2]   The absence of statutory guidance for determining what con-
stitutes proper care of a child and a person's inability to provide
that care places on the courts the burden of requiring that the
evidence establishes conclusively a compelling state interest
before the fundamental right of procreation can be infringed. The
statute does not limit unfitness to mental retardation. The term
"physical, mental or nervous disease or deficiency" includes
qualities other than diminished intelligence. The range of retarda-
tion can vary from mild to severe. We hold that a presumption of
unfitness founded solely on retardation is unwarranted. *See, e.g.,*
*Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct.
791, 39 L.Ed. 2d 52 (1974) (presumption of teacher's unfitness due
to pregnancy is unconstitutional). The burden on the petitioner to
show personality defects or traits of unfitness apart from retarda-
tion increases as the retardation ranges from severe to mild.

[3]   The statutory phrase "care for the child" is not defined, but
the courts in construing the phrase must find whether the
evidence establishes a minimum standard of care consistent with
both state interest and fundamental parental rights. The peti-
tioner has the burden of proving at least probable inability to pro-
vide a reasonable domestic environment for the child.

[4]   In the case *sub judice* the petitioner's evidence consists of
the testimony of a case worker who had the respondent as a

foster child under her supervision for several years, the testimony of the foster parent who has taken care of respondent in her home for ten years, and the testimony of a duly qualified psychiatrist who personally observed and examined the respondent and had the benefit of the psychological or psychiatric tests as required by N.C. Gen. Stat. § 35-40. We find the evidence sufficient to meet the burden imposed upon the petitioner by the statutory scheme for involuntary sterilization.

The petitioner offered proof, by clear, strong and convincing evidence, that in addition to her mild mental retardation, the respondent over a period of years had exhibited emotional immaturity, the absence of a sense of responsibility, a lack of patience with children, and continuous nightly adventures with boyfriends followed by daily sleep and bedrest. Such conduct and personality traits in addition to mental retardation clearly tend to show that respondent failed to meet any acceptable standard of fitness to care for a child by providing a reasonable domestic environment.

[5]  Respondent argues that evidence relative to her morals, sexual activity, her attitude about birth control, and statements she made to Dr. Ainslie that in her youth she would get impatient and angry with children left in her care by her parents, was irrelevant and remote. Since the questions of fitness and care before the court were broad ones and since her conduct and traits over a period of time would tend to show that her condition was not likely to materially improve, we find that the evidence was relevant. The standard of admissibility based on relevancy and materiality is of necessity elastic, and the evidence need not bear *directly* on the issue as long as there is a *reasonable, open* and *visible* connection with the subject of the lawsuit. 1 Stansbury's N.C. Evidence § 78 (Brandis rev. 1973).

We have carefully examined respondent's other assignments of error and considered her arguments. We find the statement of the contentions of the parties by the trial court expressed fairly the court's view of the legal principles applicable to the factual situation, without any expression of opinion prejudicial to the respondent.

The jury verdict was supported by the evidence and the respondent had a fair trial in which her rights were fully protected.

No error.

Judges VAUGHN and HEDRICK concur.