STATE OF NORTH CAROLINA v. JOSEPH NELSON, JR.

No. 8318SC1113

(Filed 17 July 1984)

1. **Physicians, Surgeons, and Allied Professions § 1— practicing medicine without license — statute not vague or overbroad**

   G.S. 90-18 which prohibits the practicing of medicine without a license is not unconstitutionally vague, since the language of the statute is sufficiently specific to inform a person of ordinary intelligence as to what conduct is prohibited, nor is the language of the statute overbroad, since it does not constitute a blanket proscription against rendering aid to another person but instead specifically excepts the administering of family remedies in cases of emergency.

2. **Criminal Law § 116— defendant's failure to testify—no expression of opinion by court**

   In a prosecution of defendent for practicing medicine without a license, there was no merit to defendant's contention that the trial court improperly expressed an opinion regarding his guilt or innocence by commenting on his failure to testify on his own behalf where the instructions complained of related to defendant's duty to show that he came under one of the exceptions to practicing medicine enumerated in G.S. 90-18; furthermore, the trial court properly instructed the jury not to consider defendant's silence in arriving at its verdict.

APPEAL by defendant from *Hairston, Judge.* Judgment entered 23 June 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 5 June 1984.

Defendant was tried upon indictments charging him with five counts of practicing medicine without a license in violation of G.S. 90-18. The State introduced evidence that on two occasions in September of 1982 Martha Bradley Long visited defendant in order to be examined. Long stated that she knew defendant was not a medical doctor, but was a naturopathic doctor and an iridologist. It was stated at trial that iridology is the study of the iris and enables the examiner to look into the patient's eyes and make a diagnosis.

As a result of the examination, which involved the use of a standard blood pressure device along with the iris analysis, defendant told Long that she had severely deficient lungs and instructed her in writing to go on a seven day "cleanse." He sold her a kit which included such ingredients as volcanic ash, psyllium hulls, laxatives, spirulina and garlic capsules.

On a later occasion, defendant sold Long a combination of Sn-x herbs. After taking this medication, Long experienced coughing spells and breathing problems. She informed defendant of her reaction and was sold a number of herbs and chewable vitamins. Long later bought Lobelin extract from defendant and was told to take it to relieve her symptoms. On 4 November 1982 Long was admitted to the emergency room of a local hospital and was treated by a medical doctor for severe breathing problems.

The State also introduced the testimony of William Mills, a retired police officer who was working undercover for the Greensboro police force. Mills stated that on 23 November 1982 he went to defendant's office for an examination. Mills was taking Enderol for high blood pressure and was told by defendant to get rid of the medication, because it was not working. Defendant gave Mills garlic pills and told him they would lower his blood pressure. Defendant also told Mills that he was an iridologist and, after examining Mills' eyes, told him that he had deposits of drugs in his liver, lungs, stomach, large intestine, left leg, and left foot. Defendant gave Mills an herb kit which he stated would remove the drug deposits.

At a second meeting on 30 November 1982, Mills wore equipment to record his conversation with defendant. During that meeting, defendant told Mills to start a "cleanse," to eat fruits and vegetables only, and to do only as defendant specified for seven days. Mills was also instructed to take a ginger bath in order to remove the poisons from his pores and was given directions as to how to use the herb kit, which he later turned over to the police department.

Defendant was found guilty as charged in all five counts and was sentenced to a term of not less than two years nor more than two years in prison in two of the counts, such sentences to run consecutively. He received a prayer for judgment in the remaining three cases. From these proceedings defendant appeals.

*Attorney General Edmisten, by Associate Attorney Sueanna P. Peeler, for the State.*

*Moses and Murphy, by Pinkney J. Moses, for defendant appellant.*

ARNOLD, Judge.

[1] Defendant contends that the trial court erred in failing to grant his motion to dismiss upon the grounds that G.S. 90-18 is unconstitutionally vague and overbroad. We disagree with this contention.

G.S. 90-18 provides in part:

No person shall practice medicine or surgery, or any of the branches thereof, nor in any case prescribe for the cure of diseases unless he shall have been first licensed and registered so to do in the manner provided in this Article. . . .

The statute defines the phrase "practice medicine or surgery" as follows:

Any person shall be regarded as practicing medicine or surgery within the meaning of this Article who shall diagnose or attempt to diagnose, treat or attempt to treat, operate or attempt to operate on, or prescribe for or administer to, or profess to treat any human ailment, physical

or mental, or any physical injury to or deformity of another person.

In addition, the statute further narrows the scope of this definition by setting forth 14 exceptions.

The standard to be applied in determining whether a statute is void for vagueness is whether the statutory language gives a person of ordinary intelligence fair notice of what is forbidden by its terms. *State v. White*, 58 N.C. App. 558, 294 S.E. 2d 1 (1982). Moreover, where a statute being challenged as unconstitutionally vague does not involve First Amendment freedoms, it must be examined in light of the facts of the particular case. *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed. 2d 706 (1975).

We find that the language of G.S. 90-18 is sufficiently specific to inform a person of ordinary intelligence as to what conduct is prohibited by the statute. The terms "diagnose," "treat," "operate," "prescribe," "administer," "ailment," "injury," and "deformity" are all easily understood by the ordinary person. As for defendant, the evidence presented at trial showed that he held himself out as "Dr. Nelson" and that, although he did not possess a license, he was an iridologist who was able to make diagnoses and prescribe substances for treatment. The record also indicates that defendant was compensated for his services. This conduct clearly violated the terms of G.S. 90-18 and did not fall within any of the 14 exceptions provided by the statute. Defendant had ample notice that his conduct was forbidden by the language of G.S. 90-18. We find, therefore, that the statute is not unconstitutionally vague.

Defendant's argument that the language of G.S. 90-18 is overbroad is also without merit. In *State v. White, supra*, the court summarized the overbreadth doctrine as follows:

> [T]he overbreadth doctrine is a separate principle devised to strike down statutes which attempt to regulate activity which the State is constitutionally forbidden to regulate . . . (citation omitted). As stated in *NAACP v. Alabama* (citation omitted) 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'

58 N.C. App. at 562, 294 S.E. 2d at 4. Defendant argues that the statute is overbroad in that it constitutes a blanket proscription against rendering aid to another person. He contends that implicitly prohibited by the statute are such routine, gratuitous acts as removing splinters; treating corns on feet; attending to minor cuts, bruises, and scrapes; diagnosing a cold in a child and administering children's aspirin, orange juice, chicken soup and bed rest; "painting" a sore throat; diagnosing minor constipation and prescribing an over-the-counter laxative; treating a baby's upset stomach; and prescribing a homemade remedy for a hangover. We disagree with this contention for several reasons.

First, the administering of family remedies in cases of emergency is one of the 14 listed exceptions to G.S. 90-18, making such conduct clearly permissible under the statute. Second, the intent of the statute is to protect the public against those who would hold themselves out as medical doctors who would expect compensation in return for those services. We find that this purpose may be implied from the language of G.S. 90-18 which provides that:

> if any person shall practice medicine or surgery without being duly licensed and registered, as provided in this Article, he shall not be allowed to maintain any action to collect any fee for such services.

Third, North Carolina courts have not interpreted the statute to prohibit the rendering of aid to one's family and friends. In *State v. Baker*, 229 N.C. 73, 48 S.E. 2d 61 (1948), the North Carolina Supreme Court stated:

> It is undoubtedly true, as the accused contends, that 'the defendant cannot be convicted in this case for doing as an osteopathic physician what he would have a perfect legal right to do as a private citizen,' and that a private citizen can suggest to friends the advisability of taking some medicine without running afoul of the law. But the evidence in this case does not intimate that the accused confined himself to recommending the use of some remedy by some acquaintances.

*Id.* at 80, 48 S.E. 2d at 67.

Just as in *Baker, supra,* defendant did not confine his actions to family and friends, but, instead, attempted to diagnose and treat the ailments of at least two people with whom he had had no previous contact. Moreover, defendant expected to be compensated for his services. We find that this is the very conduct which G.S. 90-18 was intended to prohibit. The gratuitous rendering of aid, on the other hand, is not barred by the statute, despite defendant's contention to the contrary.

Finally, G.S. 90-18 does not attempt to regulate constitutionally protected activities, as referred to in *State v. White, supra.* The State is certainly empowered to protect its citizens from those who would attempt to practice medicine without having been duly licensed. In conclusion, we find that the statute is not unconstitutionally overbroad.

[2] Defendant also contends that the trial court improperly expressed an opinion regarding his guilt or innocence by commenting on his failure to testify on his own behalf. In instructing the jury regarding G.S. 90-18, the trial judge stated:

> Then it makes certain exceptions. Nurses, under certain conditions acting under the direction of a doctor, physicians from another state that are coming in just occasionally, chiropractors, osteopaths, but it does not cover anything that has been mentioned here. There are no exceptions here. Indeed, if the defendant had intended to bring himself within one of the exceptions, it would have been his duty to show that he could bring himself under the exception. So far as this case is concerned, you need not worry about the exceptions. . . .

Defendant's contention that these instructions constituted an opinion as to his guilt or innocence is fully without merit. Since the State had produced evidence of violations of the statute, it was incumbent upon defendant to introduce evidence that his actions fell within one of the 14 exceptions thereto. As defendant failed to introduce any such evidence, the jury was not required to consider the exceptions to the statute. The instructions by the court were, therefore, a correct statement of the law.

We also note that the court instructed the jury not to consider defendant's silence in arriving at its verdict by stating:

In this case, the defendant has not testified. The law of North Carolina gives him this privilege. The same law also assures him that his decision not to testify creates no presumption against him. Therefore, his silence is not to influence your decision in any way.

We find that the court's instructions to the jury were proper and that no expression of an opinion was made.

No error.

Judges WHICHARD and EAGLES concur.