STATE OF NORTH CAROLINA v. F. BELLE HOWARD AND J. C. HOWARD

No. 8512SC654

(Filed 17 December 1985)

1. Constitutional Law § 28; Physicians, Surgeons and Allied Professions § 1— practicing medicine without license—no unconstitutional selective prosecution

The State's prosecution of two naturopathic practitioners for practicing medicine without a license by administering a Herbal Tumor Removal treatment to a cancer victim did not constitute selective prosecution in violation of their rights to equal protection under the Fourteenth Amendment since (1) evidence presented by defendants concerning merchants selling nonprescription drugs, herbal remedies and books on treatment and diets to cure cancer and testimony by a naturopathic physician licensed to practice in Oregon and a herbologist did not relate to others similarly situated and committing the same acts, and (2) defendants failed to show bad faith on the part of the prosecution but showed only a lack of knowledge of others subject to prosecution for the same offense.

2. Physicians, Surgeons and Allied Professions § 1— practicing medicine without license—statute not unconstitutional on its face

There is no merit to defendants' contention that the unlicensed practice of medicine statute, N.C.G.S. 90-18, is unconstitutional on its face on the ground that the terminally ill have a fundamental right to choose unorthodox treatment and that any statute which punishes those who provide such treatment unconstitutionally infringes upon this fundamental right.

3. Criminal Law § 53; Physicians, Surgeons and Allied Professions § 1— practicing medicine without license—Herbal Tumor Removal treatment—competency of testimony by medical experts

In a prosecution of two naturopathic practitioners for practicing medicine without a license, the trial court did not err in ruling that experts in the fields of medicine and forensic pathology were qualified to state opinions that the use of a counterirritant such as the Herbal Tumor Removal treatment was not an effective treatment for the disease of pancreatic cancer. Moreover, such testimony was not prejudicial since the standard of care employed by defendants was not at issue.

4. Criminal Law § 73.2— deceased witness—statement admissible as exception to hearsay rule

The written statement of deceased cancer victim was admissible against defendants under N.C.G.S. 8C-1, Rule 804(b)(5) in a prosecution for practicing medicine without a license because it dealt with material facts which were more probative on the points offered than other evidence which the proponent could procure through other means, the interests of justice were best served by its admission, and, although defendants received written notice of the prosecution's intent to offer the statement only on the morning of trial, they were granted a continuance until the following morning to prepare to meet the statement.

State v. Howard

**5. Physicians, Surgeons and Allied Professions § 1— practicing medicine without license—intent irrelevant**

In a prosecution of two naturopathic practitioners for practicing medicine without a license, the trial court did not err in excluding evidence offered to show defendants' intent or in failing to instruct the jury on defendants' intent since the lack of criminal intent does not constitute a valid defense to the crime charged.

**6. Physicians, Surgeons and Allied Professions § 1— practicing medicine without license—sufficiency of evidence**

The State's evidence was sufficient to support the female defendant's conviction of practicing medicine without a license where it tended to show that she used the title "Dr."; she received patients in two treatment rooms in her home containing examining tables and other medical equipment and supplies; she received $2,000 for administering a Herbal Tumor Removal treatment to a cancer victim; she professed to the cancer victim that his cancer was gone when she removed a section of skin from his abdomen at the site of the treatment; and she had a privilege license but no license to practice medicine.

**7. Physicians, Surgeons and Allied Professions § 1— practicing medicine without license—aiding and abetting—sufficiency of evidence**

The State's evidence was sufficient to support the male defendant's conviction of practicing medicine without a license by aiding and abetting where it tended to show that defendant was present during Herbal Tumor Removal treatments administered to a cancer victim by the codefendant; he prepared the treatment salve on at least one occasion and cleaned the wound created by the salve; and defendant was totally responsible for the cancer victim when the codefendant went to Atlanta for a seminar.

**8. Physicians, Surgeons and Allied Professions § 1— practicing medicine without license—naturopathy not exception to statute**

The trial court in a prosecution for practicing medicine without a license did not err in instructing the jury that the practice of naturopathy was not one of the 14 exceptions listed in N.C.G.S. 90-18 where defendants presented no evidence that the practice of naturopathy falls within one of the areas expressly excluded from the licensing requirement of N.C.G.S. 90-18.

APPEAL by defendants from *Johnson, E. Lynn, Judge.* Judgment entered 7 December 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 30 October 1985.

Defendants were each charged on bills of indictment with (1) obtaining property by false pretenses, (2) assault on a handicapped person and (3) practicing medicine without a license. Defendant F. Belle Howard was convicted of practicing medicine without a license. From a judgment imposing a suspended sentence of five years and $100 fine plus restitution, defendant appeals. Defendant J. C. Howard was convicted of practicing

medicine without a license by aiding and abetting. From a judgment imposing a suspended sentence of five years and $100 fine plus restitution, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Thomas B. Wood, for the State.*

*Nance, Collier, Herndon & Wheless, by James R. Nance, Jr., for defendant appellants.*

JOHNSON, Judge.

Defendants present ten questions for review. These questions fall into the following broad categories: (1) whether the indictment should have been quashed and the charges dismissed prior to the jury trial on the grounds that the prosecution against defendants was based upon a statute that is unconstitutional; (2) whether the court erroneously allowed the admission of certain expert testimony; (3) whether the court erroneously allowed the admission of a written statement of the deceased "patient"; (4) whether the court committed reversible error when instructing the jury; (5) whether the evidence presented was sufficient to withstand the defendants' motion to dismiss at the close of all of the evidence.

The defendants were initially indicted for obtaining property by false pretenses, assault on a handicapped person and practicing medicine without a license. The State took a voluntary dismissal on the charges of assault on a handicapped person. The jury returned a verdict of guilty on the charge of practicing medicine without a license as to each defendant and verdicts of not guilty on the charges of obtaining property by false pretenses. Each of the alleged violations arose when the defendants rendered services to Wilbur Clough, then terminally ill with pancreatic cancer. We will address each question presented by the defendants following presentation of the factual background.

I

Prior to 30 April 1983 Wilbur Clough was diagnosed as having terminal pancreatic cancer. He received treatment at the Veterans' Administration Hospital in Oteen, North Carolina until he was told further treatment would be of no avail. Wilbur Clough contacted defendant Belle Howard, whom he had heard

treated cancers. Both defendants used the title "Dr." Both defendants received training in naturopathy and held themselves out as naturopathic practitioners. Dr. Belle Howard was known for using a treatment referred to as the Herbal Tumor Removal (HTR) treatment. On or about 30 April 1983, Wilbur Clough and his wife went to Fayetteville, North Carolina for the purpose of discussing the treatment. The treatment consisted of the applications of two salves to the skin in the vicinity of the cancer. After receiving an explanation of the treatment from Dr. Belle Howard and seeing photographs of the treatment, Mr. Clough paid defendant Belle Howard a $2000.00 fee to cover the treatment and room and board during the course of the treatment. Prior to receiving the treatment Mr. Clough was informed the treatment would be painful. From 30 April 1983 to 13 May 1983 defendant Belle Howard administered salves and vitamins to Mr. Clough. On 13 May 1983 Belle Howard went to Atlanta to attend a seminar, leaving Mr. Clough under the supervision of defendant J. C. Howard. That night Wilbur Clough insisted that J. C. Howard call an ambulance. He was taken to a hospital and treated for "chemical burns" at the site of the salve application. Wilbur Clough died of pancreatic cancer prior to the case being heard at trial.

## II

Defendants filed a motion to dismiss on 18 April 1984 on the grounds that the statute upon which the indictments were based was unconstitutional both as applied to the defendants and on its face. Immediately preceding the jury trial on 26 November 1984, a full evidentiary hearing was conducted. The court denied defendants' motion to dismiss in open court. To this holding defendants assign error and reassert on appeal their objections on constitutional grounds.

## A

[1] Defendants were indicted under G.S. 90-18 (1981). G.S. 90-18 provides in pertinent part:

> No person shall practice medicine or surgery, or any of the branches thereof, nor in any case prescribe for the cure of diseases unless he shall have been first licensed and registered so to do in the manner provided in this Article. . . . The person so practicing without license shall be guilty of a misdemeanor. . . .

The statute defines the practice of medicine or surgery in the following manner:

> Any person shall be regarded as practicing medicine or surgery . . . who shall diagnose or attempt to diagnose, treat or attempt to treat, operate or attempt to operate on, or prescribe for or administer to, or profess to treat any human ailment, physical or mental, or any physical injury to or deformity of another person: [unless such activity falls within one of fourteen exceptions].

Defendants contend that the State's prosecution against them constituted selective prosecution in violation of their rights to equal protection under the fourteenth amendment. We disagree.

It is well settled that the General Assembly has the right to require an examination and certificate as to competence of persons desiring to practice medicine. *State v. Call,* 121 N.C. 474, 28 S.E. 517 (1897). It is in no sense the creation of a monopoly or special privilege. *Id.* We recognize that "[t]hough the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." *Yick Wo v. Hopkins,* 118 U.S. 356, 373-74, 30 L.Ed. 220, 227, 6 S.Ct. 1064, 1073 (1886). Even if the enforcement of a particular law is selective, it does not necessarily follow that it is unconstitutionally discriminatory; it is only when the selective enforcement is designed to discriminate against the persons prosecuted. *People v. Utica Daw's Drug Co.,* 16 App. Div. 2d 12, 225 N.Y.S. 2d 128, 4 A.L.R. 3d 393 (1962). The burden is on the defendant to establish discrimination by a clear preponderance of the proof. *Id.* If he sustains his heavy burden he is entitled to dismissal. *Id.*

The generally recognized two-part test to show discriminatory selective prosecution is (1) the defendant must make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not; (2) upon satisfying (1) above, he must demonstrate that the discriminatory selection for prosecution was invidious and done in bad faith in that it rests upon such impermissible considerations

as race, religion, or the desire to prevent his exercise of constitutional rights. *State v. Rogers*, 68 N.C. App. 358, 315 S.E. 2d 492 (1984). *See also State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979).

At the voir dire hearing in the case *sub judice*, the trial court heard testimony, received evidence and heard counsels' arguments. Three witnesses were called by defendants. The first witness, a paralegal employed by defendants' attorney's law firm, presented items admitted into evidence. The witness had purchased these items at a local health food store, bookstore, and convenience store. The items purchased were, generally speaking, nonprescription medicines and books addressing self-cures for diseases, many specifically for cancer. Ostensibly, the purpose of this evidence was to show that these stores *provided treatment* for a fee and without a license to practice medicine.

The second witness was a practitioner of naturopathy, duly licensed to practice in Oregon. He testified that Oregon has a Board of Naturopathic Examiners which regulates the field and issues licenses. He stated his educational background, explained the theory of the HTR treatment for cancer and distinguished naturopaths from allopathic doctors, MD's.

The third witness was John DeCarter, a detective for the Cumberland County Sheriff's Department. He had participated in the investigation prior to arrest. He testified as to other arrests in Cumberland County under G.S. 90-18. He testified that he had received a complaint in the form of a letter from the hospital regarding Wilbur Clough's chemical burn.

Part one of the two-part test fails on the facts presented at the evidentiary hearing. The merchants selling nonprescription medicines, herbal remedies, and books addressing treatment and diets to cure cancer and other diseases are not within the same class as defendants. Foremost, these merchants do not offer diagnoses and do not administer a remedy directly to a particular person. The customer is merely buying a good; he is not paying a fee for a service.

The naturopathic physician licensed to practice in Oregon is also not similarly situated to defendants in that he is not governed by the law of North Carolina. By residing and practicing in

a state whose legislature has chosen to regulate the area of naturopathy, he is clearly outside the class. The herbologist who, according to the detective's testimony was arrested in Cumberland County with charges subsequently dismissed, is also not in the same class as defendants. By defendants' own testimony later in the guilt phase of the trial, herbologists use only herbs and are distinct from naturopaths. In conclusion, defendants failed to satisfy the heavy burden of showing that they were "singled out for prosecution while others similarly situated and committing the *same* acts [were] not." *Rogers, supra,* at 367, 315 S.E. 2d at 500, *quoting United States v. Greene,* 697 F. 2d 1229, 1234 (5th Cir.), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3542, 77 L.Ed. 2d 1391 (1983) (emphasis added).

Assuming *arguendo* defendants had met part one of the test, they would have failed to satisfy part two. Defendants failed to show they were prosecuted in bad faith. To show prosecution based upon an unjustifiable standard would "inevitably lead to having the district attorney take the stand to be cross-examined concerning his motive and purpose in prosecuting the case." *State v. Spicer,* 299 N.C. 309, 314, 261 S.E. 2d 893, 897 (1980). Only the motives of the prosecution as it relates to the prosecutorial decision to seek presentment and indictment is relevant. Failure to prosecute others because of a lack of knowledge that they were subject to prosecution for the same offense does not amount to an equal protection violation of the fourteenth amendment, *State v. Rogers, supra,* nor does evidence of prosecutorial laxity, delay or inefficiency, *Kresge Co. v. Davis,* 277 N.C. 654, 178 S.E. 2d 382 (1971).

In the instant case, Investigator DeCarter testified that the Cumberland County Sheriff's Department had received no other complaints concerning naturopaths. At most this shows lack of knowledge of others subject to prosecution for the same offense, which is inadequate to show bad faith. Evidence presented by defendants for the purpose of showing bad faith as to the hospital or hospital physicians is not relevant to bad faith of the *prosecution.* The defendants did not call the district attorney to the stand. No evidence showed intentional, bad-faith discrimination by the prosecution.

B

[2]　Next defendants contend that G.S. 90-18 is unconstitutional on its face on the grounds that the terminally ill have a fundamental right to choose unorthodox medical treatment and that any statute which punishes those who provide unorthodox treatment unconstitutionally infringes upon this fundamental right. We reject their argument.

Defendants' theory relies upon the basic assumption that persons have a fundamental right to refuse lifesaving medical treatment, as held in *In re Quinlan*, 70 N.J. 10, 355 A. 2d 647 (1976). Defendants infer from this fundamental right another fundamental right, that is, the right of the terminally ill to choose unorthodox medical treatment. Defendants syllogize that this fundamental right extends to protect the person who provides the unorthodox treatment—to conclude otherwise, they opine, would allow impermissible infringement upon the fundamental right of the terminally ill to choose unorthodox treatment. We find defendants' logic strained. North Carolina recognizes certain personal rights that are deemed fundamental and, as such, are protected by the due process and equal protection clauses of the fourteenth amendment. *In re Johnson*, 45 N.C. App. 649, 263 S.E. 2d 805 (1980). *See also Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed. 2d 1010 (1967). For example, the rights of procreation and privacy within a marriage are deemed fundamental. *In re Johnson, supra.* That is not the case on these facts. North Carolina is not bound by the *Quinlan, supra*, case. Neither the United States Supreme Court nor any North Carolina court has recognized a fundamental right of the terminally ill to choose unorthodox medical treatment, let alone recognize protection extending to *anyone* willing to provide it. Such a result would undermine the purpose of the licensing statute, namely, to protect the safety and health of the public, *State v. Call, supra*, and encourage the unprincipled to abuse the terminally ill. Furthermore, G.S. 90-18 does not prohibit the terminally ill from *receiving* unorthodox treatment. The statute seeks only to assure that whatever medical treatment is administered is done so by one who has reached a certain level of skill and expertise. We conclude that all of defendants' assignments of error as to the voir dire hearing are without merit.

### III

[3]   Defendants next assign as two errors the admission of the opinion testimony of each of two medical doctors, claiming each was not qualified as an expert in the field of naturopathy. We will treat these assignments together. Dr. Roach was admitted as an expert in the field of medicine; Dr. Thompson was an expert in forensic pathology. Both doctors were asked to give an opinion as to whether the use of a counterirritant such as the HTR treatment was an effective treatment for the disease of pancreatic cancer. Both said it was not.

Ordinarily whether a witness qualifies as an expert is exclusively within the discretion of the trial judge and is not to be reversed on appeal absent a complete lack of evidence to support his ruling. *State v. Combs*, 200 N.C. 671, 158 S.E. 252 (1931). To qualify, the expert need not have had experience in the very subject at issue. *See State v. Wilcox*, 132 N.C. 1120, 44 S.E. 625 (1903). Rule 702 defines an expert witness as one who is qualified "by *knowledge*, skill, experience, training, or education." G.S. 8C-1, Rule 702 (Supp. 1983) (emphasis added). It is enough that through study or experience the expert is better qualified than the jury to render the opinion regarding the particular subject. *State v. Smith*, 221 N.C. 278, 20 S.E. 2d 313 (1942).

In the present case, Dr. Roach testified that he had knowledge regarding the use of counterirritants, indeed, that physicians used this type of treatment under certain circumstances. His area of expertise encompasses that of naturopathy. His knowledge of naturopathy plus his experience and education render him competent to offer an opinion as to the likely success of the HTR treatment. The jury could consider the differences between the two schools of thought when deciding what weight to give the evidence. The same analysis would apply to the opinion testimony of Dr. Thompson. Even though qualified as an expert in forensic pathology, he testified that his occupation is "a physician in the practice of forensic pathology." Furthermore, his own statement that he is not an expert in the area of counterirritants is not binding on the court. As stated earlier, it is in the sole province of the trial judge, not the witness, to decide if the witness satisfies the legal requirements.

Lastly, the evidence admitted was not prejudicial. The standard of care employed by the defendants was not at issue. The issue was whether they were practicing medicine as defined by G.S. 90-18. The opinions offered as to the likely effectiveness of the treatment were not relevant to the issue at hand.

## IV

[4] Defendants next assign error to the admission of the written statement of the deceased victim Wilbur Clough. The written statement was offered during the direct examination of Lieutenant John DeCarter of the Cumberland County Sheriff's Department. Lieutenant DeCarter headed the investigation of the charges prior to the arrest of defendants. The lieutenant recorded Mr. Clough's response to questions presented by Lieutenant De-Carter when Mr. Clough was hospitalized for chemical burns. According to DeCarter's testimony, Wilbur Clough was given the opportunity to read the four page document but he declined to do so, saying he was aware of what he had said. He signed the top page of the document.

The North Carolina Rules of Evidence provide that a hearsay statement is admissible when the declarant is unavailable as a witness if the court determines the statement is (1) offered as evidence of material fact, (2) more probative on the point for which it is offered than any other evidence which the proponent can reasonably procure and (3) the interests of justice are best served by admission of the statement. G.S. 8C-1, Rule 804(a) and 804(b)(5) (Supp. 1983). The rules condition the admission under this exception upon the proponent's written notice of his intention to offer the statement to the adverse party sufficiently in advance to provide the adverse party with a fair opportunity to meet the statement. *Id.* In defendants' assignment of error they challenge whether the conditions of adequate notice and fair opportunity to meet the statement were satisfied. We hold they were.

The facts in the instant case come within the purview of Rule 804(b)(5). The declarant was unavailable as a witness as defined by Rule 804(a)(4), having died of cancer before the case came to trial. Moreover, his statement did concern material facts which were more probative on the points offered than other evidence which the proponent could procure through other means and the interests of justice were best served by its admission. Defendants

contend this evidence could have come through the testimony of Era Clough, the wife of Wilbur Clough. This is not so. Wilbur Clough described events in his written statement that occurred when Era Clough was not present, specifically statements concerning the role played by defendant J. C. Howard. This evidence could be procured by no other means.

Defendants did not receive written notice of the prosecution's intention to offer the written statement of the deceased until the morning of the trial. They contend they did not have adequate time to meet the statement. Upon defendants' objection, the jury was excused and the court allowed cross-examination of Lieutenant DeCarter regarding the apparent state of mind of Mr. Clough at the time the statement was taken. In addition the court questioned Lieutenant DeCarter in an effort to ascertain whether Mr. Clough's statement was made knowingly and voluntarily. The court held that the statement was admissible, and, since the notice was served only that morning, granted a continuance until the following morning. The court also directed Dr. Roach, the physician who treated Mr. Clough's burns, to be present with "any further [medical] documents" to allow defendants an opportunity for further cross-examination. Some of the medical records were not available until the third day of trial, at which time defendants examined Dr. Roach extensively as to what medication Wilbur Clough had taken prior to the time the written statement was taken, as well as the possible effects of the medication. In conclusion, defendants were given a continuance to prepare to meet the prosecution's proffer of the deceased's written statement. The trustworthiness of the statement was well litigated by (a) cross-examination of the person who took the statement and by (b) approximately fifty pages of direct examination of the attending physician in the presence of the jury and with access to all medical records requested by defendants. It was not error for the court to admit the statement.

V

[5] Defendants assign error to the exclusion of evidence offered to show the intent of defendants. Defendant Belle Howard and Dr. Gil Alvarado, a naturopath practicing in Charlotte, were prepared to testify that they had researched North Carolina law to determine the licensing requirements for naturopaths. Defendants also

assign error to the exclusion of a jury instruction on the recitation of this excluded evidence. We will treat these assignments of error together.

It is within the power of the General Assembly to declare an act criminal regardless of the intent of the doer of the act. *State v. Hales*, 256 N.C. 27, 122 S.E. 2d 768 (1961) (violation of shoplifting statute). "The doing of the act expressly inhibited by the statute constitutes the crime." *Id.* at 30, 122 S.E. 2d at 771. When the crimes are related to the public welfare or safety, courts have held there is no due process violation even when the person is without knowledge of the facts making the act criminal. *Watson Seafood & Poultry Co. v. George W. Thomas, Inc.*, 289 N.C. 7, 220 S.E. 2d 536 (1975). The punishments for such violations are usually a fine. *Id.* Examples of laws that fall within the scope of this rule are violations of motor vehicle and traffic laws. *Id.* at 13-14, 220 S.E. 2d at 541. Statutes in this category "place upon the individual the burden to know whether his conduct is within the statutory prohibition." *Id.* at 15, 122 S.E. 2d at 542.

G.S. 90-18 is a statute enacted by the General Assembly to protect the safety and health of the public. The statute does not contain language indicating a level of intent, such as "willfully." Violation of G.S. 90-18 constitutes a misdemeanor punishable by at most a $100 fine or imprisonment, at the court's discretion. Both defendants received a $100 fine and a suspended sentence. It is irrelevant what information defendant Belle Howard encountered in her efforts to research the law. Dr. Gil Alvarado's intent has no bearing whatsoever on the case. The burden rests upon defendants to know whether their conduct is prohibited by G.S. 90-18. Because a lack of criminal intent does not constitute a valid defense, the court was under no duty to instruct the jury on the defendants' intent.

## VI

Defendants assign error to the court's denial of their motion to dismiss as to both defendants at the close of all the evidence. By so moving, each defendant preserved his right to contest the sufficiency of the evidence. Rule 10(b)(3), N.C. Rules App. P.

[6] In the case *sub judice*, the following evidence, taken as a whole, is sufficient to establish that defendant F. Belle Howard

practiced medicine without a license within the meaning of G.S. 90-18: Belle Howard used the title "Dr."; she received patients in two treatment rooms in her home equipped with, *inter alia,* examining tables, surgical tape, thermometers, disposable hypodermic syringes with needles, autoscopes, sponges, tongue depressors, the Hippocratic Oath framed; stethoscopes, urethra catheterization trays, and patient files; she rendered services for a fee; in particular she received $2000 from Wilbur Clough, she treated Wilbur Clough by applying two types of salves on his abdomen; she administered capsules of cayenne pepper to Wilbur Clough; she advised him not to go to the hospital when he complained of passing blood and experiencing severe pain; she professed to Wilbur Clough that his cancer was gone when, on the eleventh day of treatment, she removed a six inch by twelve inch section of skin from his abdomen, the site of the salve applications; F. Belle Howard had a privilege license but no license issued by the Board of Medical Examiners to practice medicine.

[7] The court instructed the jury as to defendant J. C. Howard on the charge of practicing medicine without a license by aiding and abetting. In view of our holding regarding the admission of the written statement of the deceased Wilbur Clough, unquestionably there was sufficient evidence regarding defendant J. C. Howard to take the case to the jury. The written statement contained evidence that J. C. Howard was present during the treatments, prepared the salve on at least one occasion and cleaned the wound created by the salve. Also, Era Clough, wife of Wilbur Clough, testified that defendant J. C. Howard was totally responsible for Mr. Clough on the day Belle Howard left for Atlanta. Defendants' assignment of error is dismissed.

## VII

[8] In defendants' last assignment of error, they contend the court committed reversible error by instructing the jury that the practice of naturopathy was not one of the fourteen exceptions listed in G.S. 90-18. Once the State produces evidence of one committing acts that satisfy the definition of "practicing medicine or surgery" within the meaning of G.S. 90-18, it is "incumbent upon defendant to introduce evidence that his actions fell within one of the 14 exceptions thereto." *State v. Nelson,* 69 N.C. App. 638, 643, 317 S.E. 2d 711, 714 (1984). If the defendant fails to produce any

such evidence, the jury need not consider the exceptions to the statute and a jury instruction to that effect is a correct statement of the law. *Id.*

Defendants, as the defendant in *Nelson, supra,* rested their entire case on theories other than the theory that the practice of naturopathy fell within one of the fourteen areas expressly excluded from the licensing requirement of G.S. 90-18. Defendants introduced no evidence to support a finding that naturopathy is contained within any one of the exceptions. The jury instruction recapitulating that fact is without error.

No error.

Chief Judge HEDRICK and Judge WHICHARD concur.